JOHN A. BECK v. CITY OF ST. PAUL and Others.[1]

November 14, 1902.

Nos. 13,164—(133).

**Municipal Debt Limit.**

The provisions of Laws 1899, c. 351, § 10, imposing a restriction upon municipalities framing their own charters under the constitutional amendment of 1898 to an indebtedness of five per cent. of their assessed valuations, have not been changed by Laws 1902 (Ex. Sess.) c. 33, to allow a city to issue bonds in excess of such specified limit to construct an armory for the National Guard.

**Same—Constitution.**

The terms of Laws 1899, c. 351, § 10, which prohibits the creation of an indebtedness in excess of the five per cent. limit in all cities having over eight thousand inhabitants, so far as relative to municipalities having more than ten thousand people, are valid, and not in violation

[1] Reported in 92 N. W. 328.

of section 36, article 4, of the state constitution, authorizing classification of cities on the basis of population.

## Same—Funding Floating Debt.

That part of Laws 1899, c. 351, § 10, authorizing cities framing their own charters to provide for the payment of their existing floating indebtedness or for water or light facilities in excess of the five per cent. limit, does not constitute an illegal discrimination in favor of such municipalities against others that have no floating indebtedness, or have already purchased and paid for water and light plants.

Appeal by defendants from an order of the district court for Ramsey county, Bunn, J., overruling their separate demurrers to the complaint. Affirmed.

*James E. Markham* and *George C. Lambert*, for appellants.

*J. M. Hawthorne*, for respondent.

LOVELY, J.

This is a suit to restrain the city of St. Paul, its mayor, treasurer, and comptroller, from the delivery of $99,000 of bonds of the city to construct an armory for the use of that part of the National Guard stationed in St. Paul. This appeal comes here upon an order holding, upon demurrer, that the complaint sets forth a good cause of action. This pleading alleges, substantially, that plaintiff is a taxpayer; that the St. Paul Armory Association is a part of the National Guard, organized under the laws of this state; that it had offered to deed a valuable lot to the city upon condition that it would erect and maintain an armory thereon; that the city, by ordinance, accepted the proposition, and directed the issuance and sale of its bonds for $99,000, in denominations of $1,000 each, for that purpose; that the bonds have been placed in the hands of the city comptroller for delivery to parties who have offered to purchase the same, and are about to be delivered; that at the time the ordinance was passed the bonded indebtedness of the city exceeded five per cent. of the total value of its taxable property, according to the last preceding assessment for the purpose of taxation, hence that the issuance of the bonds will impair the property rights of plaintiff as a taxpayer, who seeks an injunction to restrain the delivery of the bonds.

Under Laws 1902 (Ex. Sess.) c. 33,

"Any city, village or town may enter into a contract or lease for a period of not exceeding twenty years. And if the village or city council shall deem it expedient to purchase or erect such armory, it shall have the power and is hereby authorized to issue city or village bonds for the cost of such building and site, in such amount and denominations and payable at such places and at such times, not to exceed twenty years from date thereof, as it may determine, the interest thereon not to exceed four per cent. per annum, with interest coupons attached, payable semi-annually."

It may be conceded for the purpose of this review, that the bonds of defendant here questioned might be issued, but for the restrictions of Laws 1899, c. 351, § 10, which, so far as here material, reads as follows:

"The total indebtedness of such city, except as hereinafter provided, shall not thereby be made to exceed five per cent. of the total value of the taxable property of such city, according to the last preceding assessment for the purposes of taxation."

This act was passed to give effective force to the constitutional amendment of 1898 authorizing the formation of charters by the voters of municipalities in this state which we have sustained in State v. O'Connor, 81 Minn. 79, 86, 83 N. W. 498, and State v. District Court of Ramsey Co., supra, page 146. The St. Paul charter, which was adopted in pursuance of this act, is, without doubt, subject to any subsequent valid act of the legislature which may apply thereto. Hence the question here is, does the contracting of an indebtedness by the issuance of these bonds to purchase an armory for the National Guard in St. Paul, which is concededly in excess of the five per cent. limit, fall under the restraints of Laws 1899, c. 351, or was such limitation repealed, so far as defendant is concerned, by Laws 1902 (Ex. Sess.) c. 33?

This limitation upon the power to incur municipal indebtedness was incorporated into the general laws to effectuate a salutary municipal restraint upon excessive taxation. Citizens are allowed to frame their own charters, as authorized by the amendment to the constitution, whereby a settled policy of economy was deliberately adopted, supposedly to be adhered to with reasonable strictness; and the question before us is, has it been radically changed by an implied repeal of one of its commendable provi-

sions? It is pertinent to suggest that the same body which thus imposed a restriction upon municipal extravagance would not be likely so soon thereafter to abandon that policy. This improbability becomes still more apparent when we refer to the last clause in Laws 1899, c. 351, § 10, which expressly provides that no city council shall issue bonds for any purpose, even within the five per cent. limit, to the amount of $100,000 or over, until that purpose shall have been approved by a majority of the legal voters of the city.

The bonds voted by the council to build an armory in St. Paul were for $99,000,—a suggestive amount, in view of the power of the council to issue bonds above that amount; but if Laws 1902 (Ex. Sess.) c. 33, effected a repeal by implication of the restrictions of the five per cent. limit in Laws 1899, c. 351, § 10, because of its application to the existing conditions in St. Paul, the requirement of a vote thereon by its citizens would also be repugnant to the general authority given to all cities to issue bonds for armories expressed in Laws 1902 (Ex. Sess.) c. 33. Such a wide-open policy in favor of armories, in view of the previously expressed purpose of economy, seems extraordinary and irreconcilable, but the conviction of the legislature of this inconsistency is but a logical result of appellant's contention.

Laws 1902 (Ex. Sess.) c. 33, without doubt, applies to all cities where the five per cent. limitation had not been previously exceeded, but in St. Paul, as admitted by the demurrer, this limitation had been exceeded; and if Laws 1899, c. 351, § 10, is superseded, to authorize the issuance of the armory bonds voted by its council there would be two classes of municipalities created by the latter act, produced by the application of the law, though not expressed in terms, viz.: First, a class which had not contracted the limit of indebtedness provided for; and, second, another class which had; and this construction is affected by a repeal by implication of the five per cent. limit in the enabling act, for there is no general or special repealing clause in the statute of 1902.

It has become a legal truism that repeals by implication are not favored. Whenever such a repeal is relied upon, it generally is a question of construction whether that object was intended by the

legislature, and courts will endeavor to find some rational way to avoid such repeal, if it can be reasonably done. Sutherland, St. Const. §§ 147, 148. In such cases

"Considerations of convenience, justice, and reasonableness, when they can be invoked against the implication of repeal, are always very potent. Where a general intention is expressed, and also a particular intention is expressed which is incompatible with the general one, the particular intention shall be considered an exception to the general one. Thus, where the legislature enacts a statute in general terms, it is not reasonable to suppose that they intended to abrogate particular legislation, to the details of which they had previously given their attention, unless the general act shows a plain intention to do so. The general law can have full effect beyond the scope of the particular or special act, and, by allowing the latter to operate according to its special aim, the two acts can stand together." State v. McCardy, 62 Minn. 509, 516, 64 N. W. 1133.

To apply these principles to the two laws now before us: Laws 1902 (Ex. Sess.) c. 33, purports to be an amendment of the Laws of 1897, c. 118, known as the "Military Code." This Code gives no direct authority to cities, towns, or villages to erect armories, purchase sites, or issue bonds, but explicitly declares that it does not repeal Laws 1891, c. 54, which does grant to municipalities the authority to erect or lease armories, and purchase sites therefor, to be paid for as other municipal charges; and, until the act of 1902, no authority had been conferred by the legislature upon any municipality of this state to issue bonds for that purpose. That legislative authority is essential for such a purpose must be conceded, and goes upon statement. It also seems very clear that the principal object of Laws 1902 (Ex. Sess.) c. 33, was to grant that distinctive power, rather than to give by doubtful implication a right to overcome the salutary and wholesome restrictions of the five per cent. limit of Laws 1899, c. 351, or the right to incur indebtedness by newly chartered cities to an unlimited amount.

We have therefore reached the conclusion that the five per cent. limit of chapter 351 was not repealed by implication in Sp. Laws

1902 (Ex. Sess.) c. 33, but that both acts should be read in harmony, consistent with the legislative intent previously declared to restrain the municipalities of the state from incurring indebtedness or obligations beyond the prescribed boundary, to the same extent as if a proviso had been added to the act of 1902, declaring that it should not affect the restrictions already imposed in that respect, which is a more reasonable inference than that such restrictions had been abrogated.

It is claimed in behalf of defendants that the authority vested in St. Paul under the citizens' charter establishes an unjust discrimination between that city and others to come in under the enabling act; that some are allowed benefits that others are deprived of, which amounts to class legislation. The pith of these contentions is:

(1) That in different provisions in Laws 1899, c. 351, § 10, authority is given to cities having a population of eight thousand inhabitants or less to incur an indebtedness beyond the limit of five per cent., while all others having a larger population are restrained within that limit (that is, a restriction is made of ten per cent. for the benefit of a favored class), and that this is not authorized by section 36, article 4, of the constitution, which authorizes classification upon the basis of population; that the only basis within which cities under eight thousand would fall applies to cities of ten thousand inhabitants. Conceding, without deciding, that this claim is well founded, we leave it for the future attention of the legislature, for the bonds now under consideration are sought to be issued by a city which falls within the 'fifty thousand class, and between the two classes provided for in the amendment to the constitution (section 36, article 4) viz., fifty thousand and ten thousand, it is difficult to see any necessary relation between them. These classes are distinct and independent. We can give no force to the argument that the majority of the members of the legislature voting for Laws 1899, c. 351, were interested in the minimum, instead of the maximum, class. It must be presumed that members of the legislature act upon a fair consideration of the merits of each particular measure before that body, and we cannot now, on this review, seek out motives that lie

below the surface, to repeal its action. Its motives are presumed to be dictated by the highest considerations of duty, and we have no doubt they were in this instance.

(2) It is urged further that in the first, third, and fifth provisos of Laws 1899, c. 351, § 10, there is an unjust discrimination in favor of cities that have a floating debt, or that have not completed and paid for their water and light plants, authorizing them to incur an indebtedness for these purposes over the five per cent. limit, while cities which have already paid their floating indebtedness, or have acquired light and water facilities, do not enjoy the privilege of incurring an indebtedness therefor. This is surely not much of a discrimination against the cities where such benefits have been secured and paid for. The main object of the enabling statute (Laws 1899, c. 351) was to provide for the framing of new charters by the citizens of municipalities to meet the various urban necessities of each locality. In doing this the legislature sought to enforce restrictions in favor of retrenchment and reform in municipal management, and to limit and curtail in the future a dangerous propensity to indulge in unwarranted extravagance to do which it was desired to take in all cities that would assent to such restraints. In this case it fixed the basis of limitation at five per cent., but recognized the fact that a floating indebtedness in certain cities had already been incurred, that water and light facilities were of paramount necessity to urban life, and that it was to give these benefits where they were not provided for, and to encourage such cities to come within the policy of reform which would put them on an equality with other cities that had paid their debts, that these provisions were enacted.

Order affirmed.