# STATE ex rel. JOSEPH MILLER v. W. S. CARVER.[1]

### May 29, 1914.

### Nos. 18,794—(273).

**Intoxicating liquor — sale within half-mile zone.**
> The provision of section 3142, G. S. 1913, forbidding the sale of intoxicating liquor within one-half mile of a town or municipality which has voted no license, is constitutional, but the half mile zone which may thus by vote of the adjacent town or municipality become closed against the saloon cannot embrace any territory within a village or city.

Upon the relation of Joseph Miller, the district court for Martin county granted its writ of *habeas corpus* directed to the sheriff of that county, requiring him to show cause why relator was detained in custody. The matter was heard before Quinn, J., who quashed the writ and remanded relator to custody. From the order discharging the writ, relator appealed. Reversed.

*Dunn & Carlson* and *Frank B. Kellogg,* for appellant.

*Lyndon A. Smith,* Attorney General, *C. Louis Weeks,* Assistant Attorney General, and *E. C. Dean,* County Attorney, for respondent.

[1] Reported in 147 N. W. 660.

HOLT, J.

Appeal by relator in a *habeas corpus* proceeding from the order of the district court remanding him to the custody of the sheriff, the respondent in the writ.

The facts are these: Triumph and Monterey were contiguous villages in Martin county, this state. In Triumph license to sell intoxicating liquors may lawfully be granted, and relator duly obtained, and had a license to retail such liquors at a place within one-half a mile of the limits of Monterey. While so engaged in business an election was duly held in the village of Monterey at which a majority of the votes cast were against license. Thereupon relator was arrested for selling liquor in prohibited territory, and the warrant issued under which he is held by the respondent. The legality of the arrest is assailed by this proceeding.

The relator contends that the following provision of section 3142, G. S. 1913, under which he was arrested is unconstitutional: "The sale of such liquor in any quantity whatever is also forbidden in the following places: (1) In any town or municipality in which a majority of votes at the last election at which the question of license was voted upon shall not have been in favor of license, or within one-half mile of any such municipality, except that any intoxicating liquor, manufactured within any such district, may be sold to be consumed outside of such district." It is claimed that if full effect is given to the clause "or within one-half mile of any such municipality" the voters of one village are enabled to regulate affairs within the territory of a neighboring village, and that such power may not be delegated to any municipality. Of course, it is conceded that the legislature may delegate to municipalities power of local self government, and has so done to a large extent. The laws and ordinances enacted by a municipality in virtue of such delegated authority operate only within its own territory. It must, therefore, be admitted that the legislature may not authorize one municipality to determine for another matters which properly belong to the local affairs of the latter. Harrington v. Town of Plainview, 27 Minn. 224, 232, 6 N. W. 777; State v. Young, 29 Minn. 474, 9 N. W. 737; State v. Simons, 32 Minn. 540, 21 N. W. 750. However, the legislature has

not delegated to any town or village an unrestricted power over the retail liquor traffic. At least ever since 1887, the policy has been to regulate and restrain by general laws all municipalities in that respect, leaving, however, to the electors or councils of such municipalities to prohibit or impose further restrictions. The law is thoroughly settled that the retail liquor trade is a business which may be regulated, restrained and even prohibited without infringing either state or Federal Constitutions. "It is not an open question in this state that the legislature may constitutionally provide for the establishment of prohibition districts by local option or by direct legislation, although the license of the sale of intoxicating liquors is the general rule of the state, and prohibition in certain districts the exception." State v. Stoffels, 89 Minn. 205, 94 N. W. 675; Foster v. Kansas, 112 U. S. 201, 5 Sup. Ct. 8, 28 L. ed. 696; Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205. The state in virtue of its police power has unquestioned and full dominion over the retail liquor business. Under that authority the privilege of local option was extended to townships first, then to villages, to certain cities by special charter provisions, and lastly to cities of the fourth class. That is, the majority of voters in the town, village or city, to which the law applies, may determine whether or not the traffic shall be entirely excluded from such municipal territory. To render the privilege more effective, should the town, village or city desire to be without the saloon, the legislature has, on the face of the statute above quoted, reserved from the territory adjoining the boundary of every municipality, wherein the voters have the right to vote no license, a half mile strip wherein the sale of liquor becomes unlawful even if a license is held, whenever such municipality votes no license. The legislature itself has established a zone in every town or municipality wherein the license to retail intoxicating liquors is always on condition that the adjacent municipality, if it be one to which the statute may apply, remains "wet." We have no doubt that the legislature may rightfully restrict the limits in any town, village or city where license is permitted, so that the traffic shall not annoy the inhabitants of adjoining municipalities who have determined not to have it. It certainly may restrict the sale to certain quarters in cities, for it may

delegate this power to a city council. In re Wilson, 32 Minn. 145, 19 N. W. 723; State v. Stoffels, supra. We fail to find any feature of the law obnoxious to the Constitution.

Section 3150, G. S. 1913, provides that a license shall be annulled by operation of law when the sale of liquor becomes unlawful in the place for which such license is granted. Therefore, if the effect of the vote in the village of Monterey was to render the sale of liquors unlawful in the half mile strip of the adjacent territory of Triumph, the relator's detention is lawful, otherwise not. The court has arrived at the conclusion that the half mile zone, wherein the sale of liquor is conditional upon the vote of the adjoining municipality upon the license question, was not intended to apply to any other territory than the organized township. Local option when first granted was confined to townships, except as included in special charters of villages or cities (section 14, chapter 18, Pub. St. 1858, chapter 112, p. 143, Laws 1875). Not until 10 years later was it given to villages by general law (section 48, chapter 145, p. 169, Laws 1885). It has been denied the voters in cities generally (Kleppe v. Gard, 109 Minn. 251, 123 N. W. 665) until chapter 387, p. 540, Laws 1913, bestowed the privilege upon cities of the fourth class. The county commissioners, during almost the whole history of the state, have had the sole charge of the issuance of license in the county outside of the incorporated villages and cities, where the regulation of the retail liquor traffic has been intrusted to the village or city councils subject to the general liquor laws of the state. It is therefore considered that it was not the intention of the legislature by the provision in the section quoted to affect any other territory than the rural township. It is not to be supposed that it was intended that one village or city, by a majority of its electors, should contract the "wet" territory of an adjacent village or city, or that the like action of the electors of a township adjoining a village or city should interfere with the determination of the village or city to have licensed saloons wherever deemed expedient within its own territory. Since for so long a time the liquor traffic within the borders of a village or city has been under the regulation of its own council, it is not reasonable to conclude that the legislature meant to disturb this in any manner by conflicting

policies of the voters of adjoining governmental subdivisions, but that the sole aim was to regulate the action of the county commissioners who have the exclusive charge of licensing drinking places in the townships of the county, so that they may not issue a license therein within half a mile of a town, village or city which has determined to do without the saloon. This conclusion is strengthened by the fact that in a township abundant room remains wherein to locate saloons, even if adjacent municipalities vote no license, while this may not be the case with all villages.

In this view the writer is unable to concur. Ever since 1887 the settled policy of the state has been to assume general control of the retail liquor trade. Municipalities may regulate, restrain and suppress, but may not deal more leniently with the traffic than the general liquor regulations permit. State v. Peterson, 38 Minn. 143, 36 N. W. 443; State v. Robinson, 101 Minn. 277, 112 N. W. 269, 20 L.R.A.(N.S.) 1127; Evans v. City of Redwood Falls, 103 Minn. 314, 115 N. W. 200; State v. Village Council of Osakis, 112 Minn. 365, 128 N. W. 295. Local option had been available to villages for 20 years when Revised Laws of 1905 were adopted, containing this prohibition against sales within one-half mile of "dry" territory. The sentiment of the people, as I see it take form in legislation, is to restrict the saloon to localities where it may be the more easily policed and its baneful influence restrained. It is easy to see the annoyance resulting to a village or city, which has eliminated the saloon from its borders, when the county commissioners see fit to authorize a public drinking place just over the line. But is it less of an annoyance if the saloon beyond the boundary is in a city or village? Assuming that the enactment was designed as a protection to the inhabitants of a town or municipality where the majority vote of the electors desired to be rid of the immediate effects of the saloon, it seems to me there is no room for imputing an intention to the legislature to distinguish between the town and the village. Furthermore, the language itself seems so plain that it is not susceptible of construction so as to exclude villages from its operation.

The conclusion of the court is that the arrest was illegal and relator must be discharged.

Order reversed.