## STATE EX REL. LYNDON A. SMITH v. CITY OF INTERNATIONAL FALLS AND OTHERS.[1]

February 4, 1916.

Nos. 19,727—(269).

**County option law.**

    1. Chapter 23 of the Laws of 1915, known as the county option law, does not infringe the rights granted by section 36 of article 4 of the Constitution to cities operating under so-called home rule charters, and is valid.

**Same—governs in city with home rule charter.**

    2. Where, under and pursuant to the county option law, a county votes to prohibit the sale of intoxicating liquors therein, the power to issue licenses for the sale of such liquors is withdrawn from every municipality within such county, including cities operating under so-called home rule charters.

Action in the district court for Koochiching county by the attorney general to restrain defendant city and its officers from issuing licenses for the sale of intoxicating liquor. The case was tried before McClenahan, J., who ordered judgment in favor of plaintiff. From the judgment entered pursuant to the order for judgment, defendants appealed. Affirmed.

    [1] Reported in 156 N. W. 249.

---

Note.—As to effect of local option law on existing power to regulate liquor traffic under charter of municipality located within local-option district, see note in 32 L.R.A. (N.S.) 534.

*F. J. McPartlin,* City Attorney, *Marshall A. Spooner, George R. Robbins,* and *George A. Bangs,* for appellants.

*Lyndon A. Smith,* Attorney General, and *Louis S. Headley,* Department Clerk, for respondent.

TAYLOR, C.

At an election held under and pursuant to chapter 23, p. 24, of the Laws of 1915, known as the county option law, the voters of Koochiching county voted to prohibit the sale of intoxicating liquors within that county. In 1910 the city of International Falls, located within Koochiching county, adopted a so-called home rule charter, under and pursuant to section 36 of article 4 of the Constitution and the enabling act passed by the legislature pursuant thereto, which charter conferred upon the city the power to license and regulate the sale of intoxicating liquors within the city. Claiming that the county option law did not deprive the city of the right given by its charter to issue licenses for the sale of intoxicating liquors, the officers of the city were on the point of issuing such licenses when this action was brought to enjoin them from doing so. The trial court rendered judgment enjoining the city and its officers from issuing such licenses and they appealed therefrom.

The sole question presented is whether the power to issue licenses for the sale of intoxicating liquors given the city by its charter has been suspended by the county option law.

Defendants contend: (1) That if the provisions of the county option law be held to apply to cities operating under home rule charters, the law is unconstitutional as infringing the rights granted to such cities by section 36 of article 4 of the Constitution; (2) that such provisions do not apply to such cities, for the reason that the law has not expressly named such cities as subject thereto.

1. The legislature possesses plenary power to regulate, restrict or prohibit the sale of intoxicating liquor to any extent it may see fit; and the legislature may grant to each of any class or classes of the political subdivisions of the state the right to determine for itself whether the sale of such liquors shall be permitted within its borders, unless some portion of the power over such matters previously possessed by the legislature has been taken from it by the amendment to the Constitution invoked

by defendants. This amendment is lengthy but so far as here material provides: "Any city or village in this state may frame a charter for its own government as a city consistent with and subject to the laws of this state * * * Before any city shall incorporate under this act the legislature shall prescribe by law the general limits within which such charter shall be framed. * * * Such charter shall always be in harmony with and subject to the Constitution and laws of the state of Minnesota. * * * The legislature may provide general laws relating to affairs of cities * * * which shall be paramount while in force to the provisions relating to the same matter included in the local charter herein provided for. But no local charter, provision or ordinance passed thereunder shall supersede any general law of the state defining or punishing crimes or misdemeanors."

Charters adopted under this constitutional provision have been before this court frequently, and it has uniformly been held that such charters "may embrace all appropriate subjects of municipal legislation, and constitute an effective municipal code, of equal force, as a charter granted by a direct act of the legislature." Grant v. Berrisford, 94 Minn. 45, 101 N. W. 940, 1133. It has also uniformly been held that the provisions of such charters relating to municipal matters supersede prior general laws relating to such matters, unless it clearly appears that the legislature intended that such general laws should still apply thereto. Peterson v. City of Red Wing, 101 Minn. 62, 111 N. W. 840; Turner v. Snyder, 101 Minn. 481, 112 N. W. 868; American Electric Co. v. City of Waseca, 102 Minn. 329, 113 N. W. 899. For instances of general laws which still applied to such cities notwithstanding charter provisions, see Townsend v. Underwood's Second Addition, 91 Minn. 242, 97 N. W. 977; Young v. City of Mankato, 97 Minn. 4, 105 N. W. 969, 3 L.R.A. (N.S.) 849; City of Duluth v. Orr, 115 Minn. 267, 132 N. W. 265; Laird Norton Yards v. City of Rochester, 117 Minn. 114, 134 N. W. 644, 41 L.R.A.(N.S.) 473; Hjelm v. City of St. Cloud, 129 Minn. 240, 152 N. W. 408. It is said that the provisions of a home rule charter have the force and effect that is given to an act of the legislature. Grant v. Berrisford, 94 Minn. 45, 101 N. W. 940, 1133; Schigley v. City of Waseca, 106 Minn. 94, 118 N. W. 259, 19 L.R.A.(N.S.) 689, 16 Ann. Cas. 169. And there can be no doubt that power granted by an act of the legislature may be

taken away by a subsequent act of the legislature. So far as we are aware, this court has never held that the legislature did not possess the power to enact laws superseding and annulling the provisions of home rule charters. On the contrary, prior decisions clearly intimate that the legislature does possess such power. In Beck v. City of St. Paul, 87 Minn. 381, 92 N. W. 328, it is said of such a charter that it "is, without doubt subject to any subsequent valid act of the legislature which may apply thereto." In State v. City of Mankato, 117 Minn. 458, 136 N. W. 264, 41 L.R.A.(N.S.) 111, it is said that, "article 4, § 36, reserves to the legislature full control over home rule charters."

The legislature has unlimited power to legislate except as such power is restricted by the Constitution. The Constitution provides that a city may frame a charter for its own government, "consistent with and subject to the laws of this state;" and further provides that such charter "shall *always* be in harmony with and subject to the Constitution and laws of the state." These provisions clearly indicate that the powers which cities may take to themselves by virtue of home rule charters are subject to the paramount power of the legislature, and may be suspended or abrogated whenever the legislature sees fit to exercise the power reserved to it. We find nothing in any of the provisions of this section of the Constitution restricting the plenary power of the legislature to make such regulations as it may deem proper for controlling and limiting the traffic in intoxicating liquors, and hold that the legislature had ample power to enact the county option law and to enact that, under the conditions and during the period therein specified, the provisions of that law should suspend and supersede all provisions relating to such traffic contained in the charters of cities within a county voting prohibition, whether such charters had been granted by the legislature, or had been adopted under and pursuant to section 36 of article 4 of the Constitution.

2. The statute provides that an election may be held in any county "to determine whether the sale of intoxicating liquors shall be prohibited therein;" and further provides that, if a majority of the votes at such election be cast in favor of prohibiting such sale, the operation and enforcement of every statute and of every municipal charter now existing or hereafter enacted or adopted, so far as the same shall make the granting of licenses for the sale of intoxicating liquors or the sale or other

disposition thereof, optional with the voters of towns, villages or cities, or any thereof, or in any manner authorize or relate to the granting or issuance of any such license shall become and be wholly suspended in said county, and in each town, village and city therein, and the selling or storing or having in possession for sale * * * intoxicating liquors in any quantity whatsoever * * * in any place in such county, shall be illegal and prohibited." Sections 2, 11, c. 23, pp. 24, 28, Laws 1915. "During the period of such prohibition and the suspension of the statutes and municipal charters first mentioned in the last preceding section, it shall be unlawful for any licensing board or council within said county to grant any license for the sale of intoxicating liquors therein. Every such license attempted to be granted in said county during such period of suspension or prohibition shall be null and void." Section 12, c. 23, p. 29, Laws 1915. Other provisions of the act provide that such prohibition and suspension shall cease in case of a vote in favor of license at a subsequent election.

By this statute, the legislature has conferred upon every county the power to determine for itself, by popular election, whether the sale of intoxicating liquors and the issuance of licenses therefor shall be prohibited within such county; and has declared in unmistakable terms that if a county shall vote for prohibition, then and in that event no intoxicating liquors shall be sold within such county, and no licenses for the sale of such liquors shall be issued either by such county itself or by any of the towns, villages or cities within the county, until such vote shall be reversed at a subsequent election. The law clearly intended that if the county shall vote for prohibition, such prohibition shall extend throughout the entire county, and that all laws and charter provisions under which sales of intoxicating liquors might be permitted, or licenses authorizing such sales be issued, shall remain in abeyance during the period of such prohibition. To hold that such prohibition does not apply to cities within the county operating under home rule charters would be contrary to the plain and unmistakable purpose of the act. In consonance with the plain intent of the law, we hold that the power to issue licenses for the sale of intoxicating liquor is withdrawn from every municipality within Koochiching county, whether such municipality be governed by a home rule charter or otherwise.

Judgment affirmed.