## STATE EX REL. HENRY N. BENSON v. PETER PETERSON AND OTHERS.[1]

May 16, 1930.

No. 27,923.

[1]Reported in 230 N. W. 830.

*Henry N. Benson,* Attorney General, *James J. Giblin* and *Baldwin, Baldwin, Holmes & Mayall,* for relator.

*Essling & Bundlie, Whipple & Atmore, A. L. Thwing, Daniel DeLury, Gannon & Strizich, F. A. Grady, Mark Nolan, Thomas J. Carey, Lawrence Carlson, Arthur L. H. Street, George H. Spear,* and *Ambrose Fuller,* for respondents.

*Farnand & Galob* and *M. J. Mulvahill,* amici curiae, filed a brief in support of the contention of respondents.

OLSEN, C.

Action by quo warranto on relation of the attorney general to test the right of respondents to hold and exercise the office of commissioners of the firemen's civil service commission of the city of Eveleth.

The firemen's civil service commission of the city of Eveleth was established under L. 1929, p. 54, c. 57, and the respondents were appointed as members thereof under that law. The one question here presented is as to the constitutionality of that act. The act provides:

"Section 1. There may be created in every city except cities of the first class, and in villages having a population of 2,000 inhabitants or more, and having a regularly employed and paid fire department, a firemen's civil service commission with powers and duties as hereinafter provided. * * *

"Section 3. Any city or village in the class mentioned in Section 1 of this act which may wish to avail itself of the provisions of this act, shall do so by a resolution of its common council, expressly accepting the provisions hereof, which resolution shall be adopted by a vote of a majority of all the members of said council, and be approved by the mayor of such city or the president of such

village council, and this act shall not apply to any such city or village until the adoption as aforesaid of such resolution."

Other sections of the act provide for the appointment, term of office, powers and duties of the commission. The commission is given control and supervision over the employment, promotion, discharge and suspension of all officers and employes of the fire department, but under civil service rules.

Relator contends that the act violates art. 4, §§ 33, 34 and 36, of the state constitution. Section 33 provides that the legislature shall pass no special law when a general law can be made applicable, and that it shall pass no local or special law regulating the affairs of cities or villages; § 34, that the legislature shall pass general laws covering the subjects upon which it is prohibited by § 33 from passing special or local laws, and that all such general laws shall be uniform in their operation throughout the state. By these sections the legislature is restrained in three particulars: (1) It can pass no special law where a general law can be made applicable; (2) it can pass no local or special law regulating the affairs of cities or villages in any event; (3) all general laws passed must be uniform in their operation throughout the state.

Under these sections two questions are presented: First, whether L. 1929, p. 54, c. 57, is a local or special law; second, if a general law, whether it has uniform operation throughout the state. The two questions may be conveniently considered together.

It is conceded that the act regulates the affairs of cities and villages. It may be conceded also that the act covers matters which ordinarily, or at least very often, are regulated by the charters of cities and villages of the class therein covered. If the act is a local or special law then it is unconstitutional.

The act is general in its terms, and the classification adopted by § 1 is not challenged. Where a proper classification is made, a law which operates uniformly upon all within the class has uniform operation throughout the state. Mathison v. Minneapolis St. Ry. Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412; State ex rel. City of Hastings v. Dakota County, 142 Minn. 223, 171 N. W. 801.

Section 1 grants to all cities in the state, except cities of the first class, and to all villages having a population of 2,000 inhabitants or more and having a regularly paid and employed fire department; power and authority to establish a firemen's civil service commission. The act by its terms applies to all cities and villages within the class. The enacting section provides that the law shall take effect and be in force from and after its passage.

The constitutionality of the act is challenged because § 3 requires that the council of any city or village desiring to avail itself of the law shall adopt a resolution accepting its provisions, and contains the clause that the act shall not apply to any city or village until such resolution is adopted. It is argued with much force that under these provisions it is left optional with each city and village to come within the act or not; that it does not go into effect except in those cities and villages which choose to adopt it; that it is left to each city and village in the class to adopt or not to adopt the law; that it goes into effect only in particular municipalities within the class and is therefore a local and special act; that as a general law it fails to have uniform operation throughout the state upon all the cities and villages in the same class.

At the outset we have the general rules that the presumption is in favor of the constitutionality of a statute and that to overcome this presumption it must clearly appear that the statute violates some provision of the constitution; or, as said in some cases, a law is not to be declared unconstitutional by the courts unless it appears beyond reasonable doubt to be unconstitutional. The provision of § 3, that in order to operate under the act the council of the city or village must first pass a resolution for that purpose, is no more than a provision regulating procedure. It has no greater effect than the provisions in many of our laws authorizing bond issues or authorizing cities and villages to make improvements or to acquire and operate public utilities or do other acts, where it is required that the city or village council desiring to operate under such a law must first pass a resolution to come under the law or do the thing authorized or submit the question to vote of the electors.

Examples of such laws are found in L. 1895, p. 575, c. 229; L. 1903, p. 459, c. 289; L. 1907, p. 588, c. 412; L. 1909, p. 537, c. 441, and p. 604, c. 486; L. 1913, p. 726, c. 500; L. 1915, p. 24, c. 23, and p. 373, c. 270; L. 1919, p. 280, c. 268, and p. 537, c. 455; L. 1923, p. 350, c. 269, and p. 465, c. 325; L. 1927, p. 37, c. 30, p. 128, c. 79, and p. 485, c. 358; L. 1929, p. 172, c. 176, and p. 377, c. 299; G. S. 1923 (1 Mason, 1927) §§ 215, 216, 5662 and 5670.

The distinctive feature of such laws is that, while they grant equal power or authority to all municipalities within the class covered to do certain things, they require as a prerequisite to the exercise of such power that the council or the electors of the municipality take certain steps, by resolution, ordinance, or vote, in order to operate under the law. The authority granted by the law is permissive and not mandatory. But as far as the law itself is concerned it grants exactly the same power to all municipalities within the class, and the law goes into effect as to all of them upon its passage. The law operates uniformly and grants equal power to all within the class. There is no constitutional provision requiring that all laws affecting municipalities must be mandatory.

Some stress is placed upon the last clause of § 3 of the act, "and this act shall not apply to any such city or village until the adoption as aforesaid of such resolution." This clause may well be held mere surplusage. It does not add or detract anything from the prior provisions of the act. Having already provided that in order to operate under the act the council must by resolution so state, the further provision that the act should not apply until such resolution is adopted adds nothing.

In construing a statute the courts will consider the language used, the subject matter, the importance of the provisions, and the object intended to be secured, and ascertain the legislative intent. Winters v. City of Duluth, 82 Minn. 127, 84 N. W. 788; State ex rel. Birkeland v. Christianson, 179 Minn. 337, 229 N. W. 313; 6 Dunnell, Minn. Dig. (2 ed.) pp. 89-91, § 8954, and notes. Construing the act before us, it seems reasonably clear that what the legislature intended, and all it intended, was to grant to these cities and vil-

lages authority to establish a firemen's civil service commission and to prescribe the requisite procedure for that purpose, leaving it optional with the municipality whether or not so to do. Other similar enactments have a bearing upon the legislative intent.

Another rule is that nonessential parts of a statute may be eliminated and incidental details stricken out without impairing the remaining enactment. 6 R. C. L. 126, § 124. Under this rule the last clause of § 3 might well be eliminated, if that were necessary in order to sustain the act.

Relator relies on State ex rel. Childs v. Copeland, 66 Minn. 315, 69 N. W. 27, 34 L. R. A. 777, 61 A. S. R. 410; Lodoen v. City of Warren, 146 Minn. 181, 178 N. W. 741; Stevens v. Village of Nash-wauk, 161 Minn. 20, 200 N. W. 927.

The act held unconstitutional in the Copeland case was one providing for departments of public works and the making of public improvements in cities of over 100,000 inhabitants. There were only two cities in the state in that class. The act provided [66 Minn. 317] that it should be enforced in any such city "whenever the common council of any such city * * * shall adopt the same by a majority vote of all the members." The mayor was given power to veto the action of the council, and provision was made for adoption of the law over his veto· by action of two-thirds of all the council members. A distinction is made in the Copeland case between laws granting charter powers and those granting only powers to enact ordinances. It is difficult to define the limits or apply that distinction, and as to general laws it could hardly be applied. It appears to have been assumed in that case that the legislative intent and the effect of the law were to give the council power to legislate; that the law did not go into effect until the council adopted it, and that in so doing the council enacted the law; that the act of the council, and not the legislature, made the law. That contention fails where the law is in force by act of the legislature and only procedure for operating under it is left to the council. Such, we think, was the legislative intent and the effect of the act we are considering. The Copeland case, 66 Minn. 315, 69

N. W. 27, 34 L. R. A. 777, 61 A. S. R. 410, has been disapproved in other jurisdictions, as noted in Lodoen v. City of Warren, 146 Minn. 181, 178 N. W. 741. It can be sustained on the wording of the act there considered and the holding that the intent and effect of the act were to give the council power to legislate by adopting the act; that the act did not go into effect except by action of the council. This factor of limitation in the application of the Copeland case is pointed out in State ex rel. Young v. Henderson, 97 Minn. 369, 106 N. W. 348. We think it should be further limited by the factors that full consideration was not there given to the intent of the legislature in passing the act, or to the question whether the action of the council there required was merely a provision regulating procedure under the act. The case cites New Jersey cases sustaining laws giving municipalities power to accept or reject the provisions of laws in relation to their affairs. It cites Pennsylvania decisions and a Florida decision to the contrary. It cites an Indiana case and an Iowa case holding local option laws prohibiting the sale of intoxicating liquor unconstitutional. Our own similar local option law was held valid. The Copeland case, within its proper limits, need not be overruled.

The case of Lodoen v. City of Warren, 146 Minn. 181, 178 N. W. 741, follows and adheres to the Copeland case. But in that case the act under consideration, L. 1919, p. 62, c. 65, which by its general terms applied to all cities of the fourth class, contained the further provision that

"the provisions of this act shall not modify or repeal the provisions of the city charter of any city of the fourth class having a home rule charter, but any such city may, however, avail itself of the benefits of this act by ordinance duly passed by the governing body thereof."

It was this provision of the act which was held invalid. It is quite apparent that a law applying to a given class of cities, which goes into effect by its own terms in part of the cities in that class but does not go into effect in other cities of the same class without a special ordinance of the council, does not operate uniformly upon

all cities in the class. One city must do something which another city does not have to do in order to operate under the law. It may be noted that while the quoted provision of the act was held invalid the law was sustained as to the cities not having home rule charters. There is much force in the reasoning in the Lodoen case. It relates however to a different subject and situation and should not be held conclusive on another subject and situation. That general statements applicable to one state of facts may not be applicable in a different situation is illustrated by the broad statement quoted from Nichols v. Walter, 37 Minn. 264, 270, 33 N. W. 800, 801, that it would be absurd "that a general law might be so submitted [to vote] and be operative in the counties where adopted, and inoperative where rejected"; yet that is what is done under local option laws and other permissive acts. State v. Stoffels, 89 Minn. 205, 94 N. W. 675; State ex rel. Miller v. Carver, 126 Minn. 5, 147 N. W. 660; State ex rel. Smith v. City of International Falls, 132 Minn. 298, 156 N. W. 249. The constitution provides, in art. 11, § 1, that laws for changing county boundaries or county seats shall, before taking effect, be submitted to the electors of the county or counties and be adopted by a majority of such electors. The adoption of home rule charters by cities and villages is wholly permissive and dependent upon the vote of the electors therein.

In the case of Stevens v. Village of Nashwauk, 161 Minn. 20, 200 N. W. 927, the statute, L. 1923, p. 204, c. 179, provided that volunteer fire departments, desiring that their members share in the benefits of the act, should within 60 days after its passage file acceptance thereof, in the form of a questionnaire, with the commissioner of insurance. The act was held invalid on the ground that it made it optional with the volunteer fire departments to come within the provisions of the act, and also on the ground that it applied only to those fire departments which did the specified acts within the limited period of 60 days. The Lodoen case, 146 Minn. 181, 178 N. W. 741, is cited. These objectionable features were sufficient to invalidate the act.

Respondents cite Schulte v. Fitch, 162 Minn. 184, 202 N. W. 719, 722, involving the constitutionality of L. 1923, p. 350, c. 269, the

cattle testing law. The law was sustained largely on the theory that it deals with a matter of state concern, public health, and that the counties were only state agencies for carrying out the law. The Copeland and Lodoen cases are distinguished as applying only to acts regulating the affairs of the municipalities therein specified. The question whether the act was general and operated uniformly still remained for consideration, and it is stated [162 Minn. 191] that the act is general both in form and operation, and that

"any county in the state can obtain the benefit of it in the same manner and on the same conditions as any other county. It does not violate the equality rules. Objection is made because the act is permissive, not mandatory, and does not go into operation in any county until the county board, on petition of a majority of the cattle owners of that area, make an appropriation to aid in defraying the expense of making the tests. A law may permit as well as command."

It is also said that laws for promoting the public health are always given a liberal construction. It is equally true that laws for promoting public safety, in the way of fire protection, should be liberally construed. There is this additional statement [162 Minn. 192]:

"It is within the province of the legislature to require compliance with such conditions as it deems proper before the powers which it confers may be exercised."

The case of State ex rel. Young v. Henderson, 97 Minn. 369, 106 N. W. 348, has already been cited. In that case, L. 1903, p. 459, c. 289, provided for transferring the management of the schools in a city from the common council to a board of school inspectors if the electors of the city should so decide at an election called for that purpose. It is there held that the act on its face applied to all coming within its terms and is not violative of the constitution; that whether the law shall take effect as to all cities of the class designated did not depend upon the action of the voters; that the act went into force and effect upon its passage and could be resorted to at any time thereafter by any city coming within its pro-

visions; that it was therefore not obnoxious to the constitution because based on existing conditions. The court called attention to the fact that similar legislation respecting the cities of St. Paul, Minneapolis and Duluth had been sustained when it was apparent that the particular legislation could apply only to one of those cities, but the legislation was general in its terms and brought within it all cities of that class.

In State ex rel. Hagestad v. Sullivan, 67 Minn. 379, 69 N. W. 1094, 1095, the constitutionality of L. 1895, p. 575, c. 229, was in question. In that law the provisions requiring the city council to pass a resolution expressly accepting the provisions of the act and that the act should not apply to any such city until the adoption of such resolution were practically identical with the provisions of § 3 of the act we are now considering. The 1895 act was one permitting cities to establish municipal courts. The law was held valid as a general law. Justice Mitchell said [67 Minn. 383]:

"A constitutional provision or a statute must be adhered to and enforced, whether it works well or ill in practice; but this constitutional inhibition against special legislation must receive a reasonable and practical construction, and not be given a strained one, so as to tie the hands of the legislature beyond the intention of the people, as fairly indicated by its terms. Moreover, a cardinal rule in all such cases is that every reasonable doubt must be resolved in favor of the constitutionality of a legislative act."

It is to be noted that the court held there that the act was not one regulating the affairs of cities and that it could not say that art. 4, § 33, was intended to limit the power of the legislature to establish new courts. That even such a law must have uniform application to all cities within the class covered seems apparent.

In Thorpe Bros. Inc. v. County of Itasca, 171 Minn. 312, 213 N. W. 914, the constitutionality of L. 1927, p. 222, c. 147, was sustained. Under that act the county board, in order to operate under the law, was required to pass a resolution for that purpose within 90 days after the passage of the act. The act was permissive as to all counties within the classification adopted. While the act was

held to be in the nature of an emergency measure, so that the 90-day limitation as to action thereunder was not fatal, it nevertheless came under the constitutional provision that general laws must operate uniformly upon all those within the classification as then existing.

Driscoll v. Commrs. of Ramsey County, 161 Minn. 494, 201 N. W. 945, is another example of a permissive law, L. 1923, p. 320, c. 258, permitting the county board of any county within the class to determine whether or not to operate under the law. The act was held to be general in terms and to operate uniformly upon all within the class, but was held invalid because based on an invalid and arbitrary classification.

L. 1907, p. 588, c. 412, contains precisely the same provision as to resolution by council, and that the act shall not apply to any city or village until the adoption of such resolution, as does the law we are considering. The 1907 law has been before this court a number of times, but its constitutionality never raised. State ex rel. Briggs v. McIlraith, 113 Minn. 237, 129 N. W. 377; State ex rel. Village of Chisholm v. Bergeron, 156 Minn. 276, 194 N. W. 624.

Sections 33 and 34 of art. 4 of the constitution do not prohibit the legislature from enacting general laws regulating the affairs of cities. The only limitation therein, as to general laws, is that they have uniform operation upon all members of the class covered by the law.

█ Does the act under consideration violate the provisions of art. 4, § 36, of the constitution, providing for home rule charters in cities and villages? The city of Eveleth operates under such a charter and has charter provisions regulating its fire department.

Section 36 contains a provision that home rule charters may be amended by submission of proposed amendments by the charter commission to, and adoption thereof by vote of, the electors, and not otherwise. It is clear from a reading of the entire section that this limitation as to the making of amendments is directed to and applies only to action by the city or village and its officers and electors to amend the charter, and is not a limitation upon action by the legislature. This provision is followed by the statement that

"such charter shall always be in harmony with and subject to the constitution and laws of the state of Minnesota," and the provision that "the legislature may provide general laws relating to affairs of cities * * * which shall apply equally to all such cities of either class, and which shall be paramount while in force to the provisions relating to the same matter included in the local charter herein provided for." There is here not only no limitation on the power of the legislature, but an express power to legislate as to the affairs of cities having home rule charters—the only limitation being that the legislature must act through general laws. The question is fully answered in Beck v. City of St. Paul, 87 Minn. 381, 92 N. W. 328; State ex rel. Simpson v. City of Mankato, 117 Minn. 458, 136 N. W. 264, 41 L.R.A.(N.S.) 111; State ex rel. Smith v. City of International Falls, 132 Minn. 298, 156 N. W. 249.

The conclusion reached is that L. 1929, p. 54, c. 57, is a general law, which went into effect upon its passage; that it operates uniformly upon all cities and villages within the class covered thereby; that it does not violate either §33, §34 or §36, art. 4, of the state constitution, and is constitutional.

The writ of quo warranto is discharged.

Wilson, C. J.
I dissent.

Dibell, J.
I dissent.