## BOARD OF EDUCATION OF CITY OF MINNEAPOLIS AND OTHERS v. JAMES G. HOUGHTON.[1]

December 5, 1930.

No. 27,974.

*Neil M. Cronin,* City Attorney, for appellant (respondent below).
*Brill & Maslon* and *C. E. Purdy,* for respondents (relators below).

HILTON, J.

This is an appeal from a judgment ordering a peremptory writ of mandamus compelling appellant to issue a building permit.

The board of education of the city of Minneapolis, hereinafter referred to as the board, contracted with its coplaintiff, the Bracker Construction Company, a copartnership, for the erection of a public school building (to be known as the Patrick Henry Junior High School) on land owned by the board. The proposed structure complies with all the requirements of state and municipal laws and regulations relative to fire hazards, safety, and public health.

[1]Reported in 233 N. W. 834.

An application to appellant, the building inspector of Minneapolis, for a permit to erect the building was denied by him on the sole ground that the location and design of the proposed building had not been approved by the city planning commission of Minneapolis. All other requirements of law had been complied with by the parties concerned.

The only question involved in this case is whether or not c. XIII, § 4, of the home rule charter of Minneapolis applies to this building and requires the board to submit the location and design of the building to the planning commission for approval.

The board is a distinct corporate entity created by Sp. L. 1878, p. 444, c. 157, and has so existed. It is clothed with powers and charged with the performance of duties therein set forth; these include the control and management of common schools within the city of Minneapolis. Under § 1 the board may "hire or erect and maintain, as it shall deem best, school houses and school rooms, but it shall never erect any building upon land to which it has not the title in fee simple." Section 7 authorizes the board to levy taxes for the purchase of sites and buildings and for repairing school buildings. Section 9 authorizes it to purchase real estate for school purposes.

Pursuant to art. 4, § 36, of the constitution of this state, a charter was adopted by the city of Minneapolis for the government of its affairs. Chapter XVIII thereof provides for a board of education, which is clothed with the same powers as were granted under the above mentioned special law, including those specified in § 1 thereof. Nowhere in that chapter is there any limitation placed upon the right of the board to erect school buildings, nor is there anything therein requiring the board to submit the location and design of a school building to any municipal body for approval.

Chapter XIII of the Minneapolis charter created what is generally known as the "City Planning Department." Section 4 of that chapter provides:

"No public improvements shall be authorized to be constructed in the city until *the location and design* of the same have been ap-

proved by the city planning commission, provided in case of disapproval the commission shall communicate its reason to the City Council, and the majority vote of such body shall be sufficient to overrule such disapproval. If the reasons for disapproval are not given to the City Council within thirty days after the plans for the public improvements are submitted to the city planning commission, said plan shall be deemed to be approved by the city planning commission, Provided, that the term 'public improvements' shall include all paintings, mural decorations, stained glass, statues, bas-reliefs or other sculptures, monuments, fountain arches, gates, gateways, or other structures of permanent character intended for ornament or commemoration."

It is here proper to note that public school buildings to be erected by the board are not specifically mentioned in this section. This being the situation, the question arises as to whether said c. XIII, § 4, is to be construed as applying to said school buildings and as being a limitation upon § 1 of c. XVIII to the extent of requiring the approval of the location and design of this building by the planning commission. The affirmative of the proposition is contended for by appellant; the negative thereof by the respondents.

Respondents insist that as a matter of statutory construction c. XIII, § 4, of the charter does not apply to school buildings and that if it were construed so to apply and to require such approval of the planning commission § 4 would be invalid. Whenever provisions of a home rule charter are in conflict with the constitution or the legislative policy of the state as declared in its statutes such provisions must give way to the latter. 4 Dunnell, Minn. Dig. (2 ed.) § 6539; Townsend v. Underwood's Second Addition, 91 Minn. 242, 97 N. W. 977; State ex rel. Simpson v. Fleming, 112 Minn. 136, 127 N. W. 473; Kennedy v. Miller, 97 Cal. 429, 32 P. 558.

The provisions of the constitution pursuant to which the Minneapolis home rule charter was adopted expressly provide that such charter provisions must be in harmony with and subject to the laws and constitution of the state. State ex rel. Latshaw v. Bd. of W. & L. Commrs. 105 Minn. 472, 117 N. W. 827, 127 A. S. R. 581;

State ex rel. Smith v. City of International Falls, 132 Minn. 298, 156 N. W. 249.

When possible a reasonable statutory construction that avoids conflict with constitutional and statutory provisions should be adopted. 6 Dunnell, Minn. Dig. (2 ed.) § 8950. This rule of construction is applicable to the provisions of a home rule charter as well as to a statute. Home rule charters have all the force and effect of legislative enactments as to subjects properly belonging to the government of municipalities. State ex rel. Freeman v. Zimmerman, 86 Minn. 353, 90 N. W. 783, 58 L. R. A. 78, 91 A. S. R. 351; State ex rel. Latshaw v. Bd. of W. & L. Commrs. 105 Minn. 472, 117 N. W. 827, 127 A. S. R. 581; Park v. City of Duluth, 134 Minn. 296, 159 N. W. 627. It therefore follows that if possible a meaning should be given to this chapter that will bring it in harmony with the fundamental laws of the state. State ex rel. Oliver I. Min. Co. v. City of Ely, 129 Minn. 40, 151 N. W. 545, Ann Cas. 1916B, 189.

Art. 8, § 1, of the state constitution provides:

"The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature to establish a general and uniform system of public schools."

Section 3 thereof provides in part:

"The legislature shall make such provisions, by taxation or otherwise, as, with the income arising from the school fund, will secure a thorough and efficient system of public schools in each township in the state." See Jackson v. Bd. of Education, 112 Minn. 167, 127 N. W. 569; State ex rel. Smith v. City of St. Paul, 128 Minn. 82, 150 N. W. 389; State v. Cloudy & Traverse, 159 Minn. 200, 198 N. W. 457.

Acting under the mandate of the constitution, legislative action was taken. The legislature possessed almost unlimited power over all matters relating to public schools excepting only where restrictions are imposed by express constitutional provisions. The legislature has exercised its power and established a legislative

policy. "The maintenance of public schools is a matter, not of local, but of state concern." Of course there is a local interest. Associated Schools v. School Dist. No. 83, 122 Minn. 254, 142 N. W. 325, 7 L.R.A.(N.S.) 200; State v. Delaware Iron Co. 160 Minn. 382, 200 N. W. 475; State ex rel. Smith v. City of St. Paul, 128 Minn. 82, 150 N. W. 389; see also National W. W. Co. v. School Dist. 23 Mo. App. 227. The erection of school buildings is an integral part of such maintenance. To what reasonable extent powers shall be conferred upon local school districts is for legislative determination.

L. 1913, p. 796, c. 550, created the office of state superintendent of education. Section 6 thereof provides:

"He shall prescribe rules and examine all plans and specifications for the erection, enlargement and change of school buildings, which plans and specifications shall first be submitted to him for approval before contract is let, and no new school building shall be erected or any building enlarged or changed until the plans and specifications have been submitted to and have been approved by the superintendent of education. He shall include in such rules those made from time to time by the state board of health, relative to sanitary standards for toilets, water supply and disposal of sewage in public school buildings. · In all other respects the authority to make rules for public school buildings shall be vested in the superintendent of education."

In 1919 by c. 334, p. 355, laws of that year, the state board of education was created to take the place of the superintendent of education, that office being abolished and a state commissioner of education provided for. The latter was vested with the previous powers of the superintendent of education. G. S. 1923 (1 Mason, 1927) §§ 2958, 2962.

Under the authority thus conferred the proper state officers have promulgated rules applying to the erection of school buildings and sites therefor; these are applicable to school buildings erected by the board of education of the city of Minneapolis. These rules in great detail not only regulate the sites where school buildings are to be erected, but also the plans for the erection thereof and the

types of buildings to be built. Every factor relative thereto is covered by the rules. Exercised within reasonable bounds, the control of the commissioner of education is exclusive. The board (Minneapolis) has been operating under this statute since its passage. All plans for the erection of its school buildings, including the one here involved, have been submitted to and approved by the state authorities.

If the charter had provided that the planning commission or any other municipal body should have a veto power over all actions of the state commissioner of education in the exercise of his hereinbefore described duties and powers under the state law and could substitute the local determinations in place of those of the commissioner, such charter provision would undoubtedly be invalid. The same construction must be reached as to the limited infringement here contended for by appellant.

As before stated, c. XVIII of the charter does not contain even a suggestion that the exercise of the board's powers are in any way subject to the approval of the planning commission, and c. XIII, § 4, does not in terms apply to school buildings erected by said board. Further, it is significant that c. XIII provides for the submission by the planning commission to the city council of its reasons for refusal to approve plans. Plans as to Minneapolis public school buildings do not originate with the city council but with the board. For what reason then should school plans be returned to the city council in the event of their rejection by the planning commission? We are of the opinion that taking chapters XIII and XVIII of the city charter and construing them together an intent was manifest that the location and design of the school building here involved as adopted by the board need not have the approval of the planning commission before a permit therefor is issued by the building inspector. 6 Dunnell, Minn. Dig. (2 ed.) § 8948; O'Neil v. O'Neil, 148 Minn. 381, 182 N. W. 438. So construed we avoid the necessity of declaring any part of c. XIII, § 4, invalid. State ex rel. Smith v. City of International Falls, 132 Minn. 298, 156 N. W. 249; Hjelm v. City of St. Cloud, 129 Minn. 240, 152 N. W. 408.

582

Other points suggested in the memorandum of the trial court and here urged by respondents in support of an affirmance we do not find it necessary to consider.

We are of the opinion and so hold that the approval by the planning commission of the location and design of the school building here involved was not necessary and that appellant should issue a building permit.

Judgment affirmed.

WILSON, C. J.
I dissent.

HOLT, J.
I dissent.

LORING, J.
I dissent.