MELVIN W. TANNER v. CIVIL SERVICE COMMISSION OF
CITY OF MINNEAPOLIS AND OTHERS.
JOHN BYRNE, INTERVENER.[1]

December 26, 1941.

No. 33,007.

*Arthur Le Sueur,* for appellant.

*R. S. Wiggin,* City Attorney, and *Charles A. Sawyer,* Assistant
City Attorney, for defendant-respondents.

[1]Reported in 1 N. W. (2d) 602.

*Michael J. Dillon,* for intervener-respondent.

*Cronin, Mitchell & Shadduck, amici curiae,* in support of the contention of defendant-respondents.

LORING, JUSTICE.

This action was brought by a janitor-engineer of a Minneapolis school on behalf of himself and his fellow workers to enjoin the civil service commission of Minneapolis from enforcing or attempting to enforce its rules requiring them to take promotional examinations. A temporary injunction and order to show cause were issued September 13, 1940. The order came on for hearing in October 1940, and the temporary injunction was dissolved. Motion for judgment on the pleadings for defendants was made February 28, 1941. The court in the order for judgment stated that, by stipulation,—

"the only question involved and for consideration and determination by the court is whether or not the plaintiffs, performing services for the Board of Education of the City of Minneapolis as janitors and engineers in the maintenance department of said Board of Education of the City of Minneapolis, as such employes, are within the classified service of the City of Minneapolis and subject to the Civil Service provisions of the City Charter * * *."

The court granted defendants' motion, judgment was entered, and plaintiff appealed.

The pleadings present the following pertinent facts: Plaintiff is one of 446 janitors and engineers employed in the Minneapolis public schools. These employes had been promoted in accord with a plan adopted by the board of education in February 1939, but in September 1940 the civil service commission of the city threatened to take affirmative action to compel the board to require plaintiff to take an examination before the commission and to substitute its promotional plan in place of the board's.

The questions before this court on appeal are: (1) Does the Minneapolis charter give the civil service commission authority to

compel plaintiff to take promotional examinations? (2) If it does, is the section so providing void? (3) Was the procedure in the trial court proper?

■ As to the first contention, plaintiff's whole argument is based upon the erroneous premise that the board of education is not a branch of the city government and that consequently c. 19, § 4, of the present city charter, giving the civil service commission authority over city employes, did not include employes of the board.

Minneapolis, incorporated as a city in 1867, was consolidated with St. Anthony in 1872 by legislative act. In 1881, the legislature consolidated and amended that and subsequent acts to constitute the "charter of said City of Minneapolis." Sp. L. 1881, c. 76, p. 418. That "charter" was added to by subsequent enactments, and the city operated under the legislative charter until 1920.

The board of education for the city of Minneapolis was organized under Sp. L. 1878, c. 157, § 1, as a corporation having "the entire control and management of all common schools within the city of Minneapolis." No specific mention was made of its right to hire and promote employes other than teachers and superintendents. Plaintiff argues that because the board was a separate corporation it was not a branch of the city government. However, in Jackson v. Board of Education (1910) 112 Minn. 167, 127 N. W. 569, this court held that Sp. L. 1878, c. 157, was a part of the city charter, showing that the law upon which the board depended for its very existence was a part of the law of the city and that the board was a branch of the city government.

The act of 1881 above referred to, as amended by Sp. L. 1887, c. 10, § 2, dispels any doubts on the matter, for § 3, c. II, of that "charter" stated:

"For the purposes of this Chapter, it is to be understood that the Board of Park Commissioners, the Board of Education and Library Board are Boards having the management of *branches of the city government*." (Italics supplied.)

There was no reason why the board could not be a separate corporate body and still be a branch of the city government. Either the legislature or the charter might create it as an instrumentality of government.

L. 1913, c. 105, required that a civil service commission be created for the city of Minneapolis. Section 4 of the act provided:

"POWERS TO EXTEND TO CLASSIFIED SERVICE ONLY.—The powers of the commission shall extend only to the classified service, which shall embrace *the entire service of the city* except the following officers and employes, which shall be known as the 'unclassified service,' namely:

"Officers who are elected by the people; members of boards and commissions; the city clerk; secretaries of the several boards and commissions serving without pay; the city engineer; the chief health officer; the superintendent of police; the city assessor; *superintendents, principals, supervisors of teachers and teachers in the public schools;* * * *." (Italics supplied.)

When the legislature gave the commission power over the entire classified service of the city it intended to and did include school employes, for the school board was considered to be a branch of the city government. The portion of the section excluding certain school employes from the classified group shows that as clearly as if school janitors and engineers had been expressly listed as classified employes. Thus the pertinent legislative acts prior to 1920 clearly show that before 1913 the board had the exclusive authority to hire, promote, and discharge *all* school employes under the general enactment of 1878, but that in 1913 the legislature took that right as to *classified employes* from the board and vested it in the civil service commission. There is no need to fall back upon rules of statutory construction.

The most that plaintiff could possibly claim is that L. 1878, c. 157, § 1, and L. 1913, c. 105, conflict. Even if that were true and we were to apply appropriate rules of construction to determine the legislative intent, the result would be the same, for when

general and specific provisions conflict, the specific controls, particularly when the specific is enacted after the general. State ex rel. Board of Education v. Erickson, 190 Minn. 216 (cases cited on p. 221), 251 N. W. 519. It is interesting to note that this case was relied upon by plaintiff. Furthermore, if we should construe § 4 of c. 105 and § 1 of c. 157, as plaintiff asks, so as to give the school board rather than the commission authority over *all* school employes, that portion of § 4 expressly excluding superintendents, principals, supervisors, and teachers becomes mere surplusage. In Cohen v. Gould, 177 Minn. 398, 405, 225 N. W. 435, facing a comparable problem, we pointed out that such a result must be avoided if possible.

In 1920, the city of Minneapolis changed its form of government from legislative charter to home rule charter pursuant to art. 4, § 36, of the state constitution. As pointed out in State ex rel. Board of Education v. Erickson, 190 Minn. 216, 218, 251 N. W. 519, 520:

"This charter is almost wholly a reënactment of the applicable general laws, together with the special laws then in effect, relating to the government of the city of Minneapolis."

That is true of the pertinent portions of the original legislative acts authorizing and defining the powers of the board of education and the civil service commission. Chapter 18 of the charter, entitled "Board of Education," § 1, contains the exact language quoted above from the 1878 law and nothing more that is relevant than did the legislative act. The same can be said for chapter 19, entitled "Civil Service," § 4 of which is the same as § 4 of c. 105, L. 1913. Thus the home rule charter preserved the power of the commission over classified school employes. To make sure, the framers enacted an omnibus provision, § 2 of c. 20, expressly providing that the boards of the city retain all prior powers under the new charter. Granger v. City of Minneapolis, 182 Minn. 147, 233 N. W. 821.

State ex rel. Board of Education v. Erickson, 190 Minn. 216, 251 N. W. 519, held that the general power given the board of estimate and taxation, under c. 15 of the charter, to determine the maximum tax rate levied by city boards, did not deprive the board of education of its express right (c. 18, § 6) to levy taxes up to a 22-mill rate. Board of Education v. Houghton, 181 Minn. 576, 233 N. W. 834, also relied upon by plaintiff, held that c. 13 of the charter, providing that the planning commission must approve the location and design of public improvements before they. may be constructed, did not require the board of education, to which the charter gave the express authority to "hire or erect and maintain, as it shall deem best, school houses" (c. 18, § 1), to obtain such approval to build a school building. In each case, the specific provision prevailed over the general. In both the court felt that the pertinent sections of the charter conflicted, and it relied upon rules of construction to determine the legislative intent. Thus these cases are not authority for plaintiff's contention.

■ Plaintiff claims that the provision of the charter giving the civil service commission authority over classified school employes is void because it conflicts with legislative policy and the constitution. Conceding that home rule charters must give way to legislative policy *contra* (see Board of Education v. Houghton, 181 Minn. 576, 578, 233 N. W. 834), that rule does not help plaintiff here, for § 4, c. 19, of the charter is not in conflict with legislative policy.

We know of no better way to determine legislative policy than by examining all the related statutes and earlier law so far as relevant. There can be no question of what the policy was concerning this particular matter at the time the charter was adopted in 1920, for the act of 1913, discussed above, is a clear expression of legislative intent to give the civil service commission authority over classified school employes, and there was no legislation passed in subsequent years (1913-1920) contradicting that intent. It does not necessarily follow that because policy prevents another

branch of the city government from limiting the board of education's tax rate or blocking construction of school buildings that every charter provision granting another city department authority over the school system, no matter how indirect or advantageous the control may be, is void. The instant case proves the error of any such generalization.

The only portion of the state constitution which § 4, c. 19, of the charter could violate is that portion of art. 8, § 3, which provides:

"The legislature shall make such provisions, by taxation or otherwise, as, with the income arising from the school fund, will secure a thorough and efficient system of public schools in each township in the state."

The legislature in 1913 divided between the board and the commission the duties of furnishing an efficient educational system for Minneapolis by giving the commission authority over classified employes. If in the judgment of the legislature that enactment enhanced the efficiency of the system, we see no violation of the constitution. Section 4, c. 19, of the charter has the effect of a legislative act (see Board of Education v. Houghton, 181 Minn. 576, and cases cited on p. 579, 233 N. W. 834), and its constitutionality is tested in the same manner.

We fail to see any merit in plaintiff's claim that the threatened action of the commission violates art. 1, § 11, of the state constitution, which forbids impairment of the obligation of contract. If it is possible to spell out of this a contract which includes the board's 1939 promotional plan, the contract must also be subject to the legislative right (directly or through home rule charter) to change the promotional system.

■ We find no error in the procedure below. Defendants' motion for judgment on the pleadings was granted and judgment duly entered. The trial court properly ordered judgment without making findings. Lowe v. Nixon, 170 Minn. 391, 212 N. W. 896.

Affirmed.