BRUNO OLSON, DOING BUSINESS AS MINES TIMBER COMPANY v. ONEIDA MINES COMPANY AND OTHERS.. L. P. COUSINS AND OTHERS APPELLANTS.[1]

July 28, 1922.

No. 22,840.

**Mechanic's lien the creature of statute.**

1. Mechanics' liens are created by statute and exist only to the extent given by the statute.

**Sections 7020 and 7024, when inconsistent with miner's lien law, superseded.**

2. Sections 7020 and 7024, G. S. 1913, are derived from the general lien law of 1889, but section 7035 is derived from chapter 350, Laws of 1897, as amended by chapter 338, Laws of 1903, known as the miner's lien law, and supersedes sections 7020 and 7024 so far as inconsistent therewith.

**Lien for services and material in operating mine attaches to interest of lessee.**

3. The act of 1897 as amended by the act of 1903 confined liens for services and material furnished a lessee in opening and operating a mine to the interest of the lessee therein, and section 7035, G. S. 1913, also confines such liens to the interest of the lessee, and the presumption that they attach to the interest of the owner created by section 7024 does not apply thereto.

[1]Reported in 189 N. W. 455.

**Constitution not violated by putting mine liens in separate class.**

  4.  The legislature did not violate the equality provisions of the Constitution in placing mechanics' liens on mines in a class by themselves.

**Owners' interest not affected by liens in question.**

  5.  The liens in question are for services and material furnished to the lessees of a mine and did not attach to the interest of the fee owners therein.

Action in the district court for Crow Wing county to recover $2,318.37 and to enforce a lien for that amount. The case was tried before McClenahan, J., who made findings in favor of plaintiff and others and decreed that the amounts awarded were liens on the interests of the fee owners. From an order denying their motion for a new trial as to the lien claims, defendants L. P. Cousins, Sarah McAlpine and Mary Jane Campbell appealed. Reversed.

*Jaques & Hudson, E. C. Kennedy* and *Washburn, Bailey & Mitchell,* for appellants.

*Swanson & Swanson, M. E. & C. A. Ryan, Murphy & Cook, F. E. Ebner, Courtney & Courtney, Crassweller & Crassweller* and *D. B. McAlpine,* for respondents.

*Jamison, Stinchfield & Mackall* and *John R. Van Derlip,* filed a brief as amicii curiae.

TAYLOR, C.

The fee owners of a 40-acre tract of land in Crow Wing county executed a mining lease thereof to the Cuyuna-Sultana Iron Company on August 14, 1914. This company, with the consent of the fee owners, assigned the lease to the Oneida Mines Company April 16, 1918. In the early part of 1919, several mechanics' liens were filed against the property for material furnished the lessees and labor performed for them in opening and working an iron mine on the land. In October, 1919, plaintiff, a lien claimant, brought this action to enforce and foreclose his lien and made the lessees, the fee owners, and the other lien claimants parties defendant. The other lien claimants interposed answers in which they set forth and asserted their respective liens and demanded the enforcement

thereof. The fee owners interposed answers in which they asserted that the liens did not attach to their interest in the property. After the commencement of this action, and in December, 1919, the lease was canceled and terminated by the fee owners for failure of the lessees to make the payments stipulated for therein. At the trial of the action the principal controversy was whether the liens attached to the interest of the fee owners in the property as asserted by the lien claimants, or only to the interest of the lessees therein as asserted by the fee owners. The trial court made extended findings of fact and conclusions of law and held that all the liens established as valid were liens on the fee title. The fee owners appealed from an order denying a new trial.

The pivotal question is whether the liens attached to the fee title. In considering this question it is to be borne in mind that mechanics' liens are created by statute and exist only to the extent given by the statute. 18 R. C. L. 872; 2 Dunnell, Minn. Dig. § 6031.

The statutory provisions invoked are found in sections 7020, 7024 and 7035, of the General Statutes of 1913. Sections 7020 and 7024 come from the general mechanics' lien law enacted in 1889 (chapter 200, p. 313, Laws 1889). While cast into their present form in the general revision of the laws made in 1905, the provisions which bear on the present question remain substantially the same as in the original act of 1889. Section 7035 comes from chapter 350, p. 617, of the Laws of 1897, as amended by chapter 338 of the Laws of 1903, and was also cast into its present form in the revision of 1905.

Kinney v. Duluth Ore Co. 58 Minn. 455, 60 N. W. 23, 49 Am. St. 528, and Colvin v. Weimer, 64 Minn. 37, 65 N. W. 1079, seem to be the only cases in this state in which liens on mines were involved, and both were decided under the law of 1889 and before the enactment of chapter 350, p. 617, of the Laws of 1897. In the Kinney case numerous claims for labor in "stripping" a mine had been assigned to Kinney who filed a lien therefor, and the only questions presented or considered were whether the right to enforce the liens passed to the assignee of such claims, and, if so, whether he could include more than one lien in the same lien statement. It seems to have been taken for granted by all concerned that the law gave

a lien for such work, as the matter was not referred to or discussed. In the Colvin case the plaintiff sought to enforce a lien for labor in drilling holes in a tract of land for the purpose of ascertaining whether it contained a deposit of iron ore. The court held that this did not constitute an improvement upon the land within the meaning of the lien law, as the holes were only for exploring purposes and of no further use to the landowner, but remarked that labor in excavating for the purpose of opening a mine might well be considered as an act for which the party performing it would have a lien. Thereafter the legislature enacted chapter 350, p. 617, of the Laws of 1897, known as the miners' lien law, which, as amended by chapter 338, p. 620, of the Laws of 1903, to include materialmen, reads as follows:

"Section 1. Any person who performs any labor or furnishes any skill, material or machinery in or upon the development or operation of any mine, when such labor is done or performed or such skill, material and machinery is furnished at the request of the owner, lessee or contractor, owning, leasing, developing, or operating such mine, shall have a lien for the value of such services done and performed, and such skill or material used, and for the value of the use of such machinery furnished, which lien shall be upon the interest of said owner or lessee of such mine, and its appurtenances, and take precedence of all other liens and incumbrances against such property subsequent to the day upon which such skill, material and machinery is commenced to be used or such services begun.

"Provided that if such labor is done and performed and such skill, material, or machinery is furnished for a lessee or his contractor, the lien herein provided for shall only be a lien upon the interest of such lessee, and shall not effect the rights or be an incumbrance upon the interests of the owner of such mine or land.

"Section 2. Mining, stripping, drilling, test, pitting, shaft sinking, tunneling, and labor on the land shall be deemed labor in and upon the development or operation of any mine within the meaning of this act.

"Section 3. The lien herein provided for shall be enforced in the same manner now provided by law, or any amendments hereafter,

for the enforcement of liens for labor done upon buildings and structures."

The lien law of 1889, insofar as it gave a lien for labor performed or material furnished in opening or operating a mine, gave such lien upon the interest of the party at whose instance the improvement was made and also upon the interest of the fee owner if the improvement was made with his knowledge and he failed to disclaim responsibility therefor in the manner prescribed in the statute.

The so-called miners' lien law extended the lien to include exploratory work, but expressly provided that, where the services were performed or the material was furnished for a lessee or his contractor, the lien should not attach to the interest of the owner, but only to the interest of the lessee. This statute, being a later expression of the legislative will, superseded the prior statute, so far as the prior statute related to mining operations (State v. District Court of Hennepin County, 107 Minn. 427, 120 N. W. 894), but adopted the procedure prescribed in the prior statute as the procedure for enforcing the liens given by this statute.

It is clear that, under the statute as it stood prior to the general revision of the laws in 1905, the liens here in question would not attach to the interest of the fee owners in the land. This brings us to the question: Did the revisers, by recasting this statute into the form in which it appears in section 7035, change the previously existing law so as to give a lien upon the interest of the fee owner for services performed or material furnished for the lessee? The main purpose of the revision of 1905 was to simplify, condense and harmonize the then existing statutes and put them in a more orderly, compact and convenient form; and it is presumed that, notwithstanding a change in phraseology, the legislature intended to continue such existing statutes unchanged in substance, unless an intention to change them is made clear by the explicit language used in the revision or by the language used when taken in connection with the subject matter of the enactment and its previous history. 3 Dunnell, Minn. Dig. § 8961, and especially the cases cited under that section in the 1916 and 1921 supplements.

Section 7035 reads:

"Whoever performs labor, or furnishes any skill, material, or machinery, in or about the opening or working of any mine, at the request of the owner thereof, or of the lessee of such owner, or of any contractor with either, shall have a lien for the value thereof upon the interest of such owner or lessee, as the case may be, in said mine and its appurtenances, which lien may be asserted and enforced as in this chapter prescribed in respect to other liens upon real estate."

Taking this section as it reads, it gives a lien on the interest of the owner for services and material furnished at the request of the owner or his contractor, and on the interest of the lessee for services and material furnished at the request of the lessee or his contractor. The words used, if given their ordinary meaning in the connection in which they are used, cannot fairly be construed as creating a lien on the interest of either the owner or the lessee for services or material furnished at the request of the other. The expression, "as the case may be," if given the intended effect indicated by the context, precludes such a construction. This section, taken as it stands, is not in conflict with, but carries the same meaning as, the statute from which it was derived, and indicates a deliberate purpose to continue that statute in force so far as it defined the interests to which liens attach.

The claims here in question are for services and material furnished at the request of the lessees. The statute existing at the time of the revision specifically provided that the lien for such claims should be only upon the interest of the lessee. The statute as reframed, considered in the light of its history and of the presumption that the revisers intended to continue in force the then existing law, cannot, we think, be fairly construed as giving a lien for such claims on the interest of the fee owners in the absence of language clearly manifesting an intention to do so; and we find no such language.

It is urged that the provision of section 7024, to the effect that any person having knowledge of the making of an improvement shall be deemed to have authorized the same insofar as to subject his interest in the property to a lien therefor, unless he shall give

notice as therein provided that such improvement is not being made at his instance, is general in its terms and broad enough to give a lien on the interest of the fee owners for the claims in controversy. But, under the statutes as they existed at the time of the revision, this provision did not apply to liens on mines. Chapter 350 of the Laws of 1897 as amended by chapter 338 of the Laws of 1903, had taken liens on mines out of the operation of the general lien law except as to matters of procedure, and had provided specifically in what cases and to what interests such liens should attach; and we find nothing in the revision indicating a legislative intention to make this provision again applicable to such liens. The inference is to the contrary. Section 7035, like the statute from which it was derived, expressly adopts the procedure of the general lien law for the enforcement of the liens given by that section, but does not purport to make any of the other provisions of the general lien law applicable thereto. While it is undoubtedly true that the various provisions of the lien law are to be construed together and are to be harmonized so far as possible, yet to the extent that section 7035 is inconsistent with the provisions of the prior law, section 7035 controls as to the liens given thereby. And the purpose of that section to confine liens for services and material furnished to the lessee to the interest of the lessee is not consistent with the provision of section 7024 which would extend such liens to the interest of the owner. The exhaustive research of counsel has not disclosed any case in which the situation was the same as that here presented, but somewhat similar questions were considered in Caster v. McClellan, 132 Iowa, 502, 109 N. W. 1020; and Wilkins v. Abell, 26 Colo. 462, 58 Pac. 612.

It is also urged that if section 7035 exempts the interest of the fee owner of a mine from liens for claims against the lessee, it offends against the equality provisions of the Constitution, for the reason that the interest of the fee owner in other classes of property is subject to such liens. We think it was within the province of the legislature to determine whether liens for services and material furnished for the opening and working of a mine should be placed in the same class as other mechanics' liens or in a class by

themselves; that there are sufficient differences in the character and purpose of improvements which increase the beneficial enjoyment to be derived from the future use of the property in its changed condition and thereby enhance its value, and the business of opening and operating a mine and the manner of conducting such business, to justify the legislature in withdrawing mines from the operation of the general lien law. Removing the ore takes from the corpus of the property that which gives it its special value, and the completion of the work instead of improving the property for future use usually leaves it well nigh worthless. To open a mine and operate it successfully involves large expenditures and requires expert knowledge and skill. Landowners unable or unwilling to make the expenditures required to develop prospective mines on their properties frequently lease the land for a long term of years to some operator, engaged in the business of developing and operating mines, who is willing to take the risk of loss, if the venture proves unprofitable, for the chance of large returns on his investment if it proves successful. Such leases, of the form in common use, usually give the lessee the right to determine for himself when, in what manner and to what extent he shall operate, and place his doings and the expense which he may incur entirely beyond the control of the lessor.

These and many other differences in conditions which might be mentioned show that there is no sufficient ground for holding that the legislature exceeded its prerogative when it placed liens on mines in a class by themselves.

We are of opinion that the liens in question did not attach to the interest of the fee owners in the property, and the order appealed from is reversed.

HOLT, J. (dissenting.)

I dissent. I am inclined to agree with the trial court that a request to furnish labor or material in developing a mine which creates a lien on the interest of the one requesting may be either express or implied and that there was an implied request here which charged the owners with a lien.