STATE EX REL. MINNEAPOLIS POLICE RELIEF
ASSOCIATION v. CITY COUNCIL OF
MINNEAPOLIS AND OTHERS.[1]

March 17, 1933.

No. 29,360.

G. A. *Will,* for appellant (relator below).

*Neil M. Cronin,* City Attorney, and *William H. Morse* and *Thomas
B. Kilbride,* Assistant City Attorneys, for respondents.

[1] Reported in 247 N. W. 514.

448

STONE, JUSTICE.

Mandamus, wherein upon the trial, the alternative writ was quashed and the petition dismissed. Relator, Minneapolis Police Relief Association, a corporation, appeals from the order denying its motion for amended findings or a new trial.

The writ wanted was one to compel respondents, particularly the city council and the board of estimate and taxation of Minneapolis, to levy a tax of three-fifths mill for relator's benefit under L. 1931; p. 135, c. 118, § 3, Mason, 1931 Supp. § 1440, amending 1 Mason, 1927, § 1440. The concluding paragraph of that statute enacts that "an amount or sum equal to three-fifths (3/5) mill, in addition to the rate allowed to be levied by the charter of any city affected by this act, shall be annually assessed and levied at the time and in the manner that taxes for the other funds of such city are levied by the proper officers of each city where a police relief association now exists, upon each dollar of all the taxable property in such city." There being nothing in the 1931 act excepting Minneapolis or relator from its operation, counsel for the city resort to the prior legislation next to be considered.

■ Mason, 1927, § 1440, came into our law as L. 1915, p. 97, c. 68, § 5. That statute provided in § 1 [1 Mason, 1927, § 1436] for the creation of police pension funds, "which shall be managed, controlled and distributed in accordance with the provisions of this act." Section 7 declared that "this act shall not be deemed to repeal existing acts inconsistent therewith, but shall be construed as supplemental thereto, and any paid municipal police department now operating under other police pension laws of this state, shall continue thereunder until it shall elect to come under the provisions of this act, with the consent of the city council or other governing body of said city."

December 14, 1923, by resolution, the Minneapolis city council granted relator its "permission and consent * * * to operate under the Police Pension and other provisions of Chapter 68 of the Laws of Minnesota for 1915." Ever since relator has been functioning under the 1915 statute, as amended by L. 1921, p. 167, c. 118, and L. 1923, p. 49, c. 54.

The claim for respondents, and the ground of decision below, was that L. 1931, p. 135, c. 118, and particularly § 3, increasing the tax levy, like the act of 1915, was conditional upon and ineffective without the consent of the city council. The latter has not consented to any part or effect of the 1931 law.

Minneapolis did not have a home rule charter until 1920, when its present one was adopted. So, it is argued for respondents, inasmuch as L. 1915, p. 97, c. 68 [1 Mason, 1927, § 1436, et seq.] applied only to cities with a population of over 50,000 inhabitants *and* a home rule charter, Minneapolis was not included, because when the law was enacted, and for five years thereafter, Minneapolis lacked the kind of charter which was one of the conditions precedent to its application. Short and conclusive is the refutation. The conditions of the statute spoke in terms of the future as well as the present. They had to in order to speak constitutionally. Roe v. City of Duluth, 153 Minn. 68, 189 N. W. 429. The language is [L. 1915, p. 97, c. 68, § 1]: "now having or hereafter having a population of over 50,000 inhabitants, and having a home rule charter." So any city with the requisite population but without the home rule charter at the effective date of the law, and so not then within its coverage, would become so if and whenever, still having enough inhabitants, it adopted a home rule charter. That Minneapolis did in 1920; and, since the express consent already mentioned was given in 1923 to relator's election to take advantage of the 1915 law, it must be held, and was so considered below, that ever since relator has been operating under and subject to the 1915 statute.

■ This brings us to the determining question whether the consent of the city council was prerequisite to relator's having the benefit of the increased tax rate called for by the 1931 law. The language itself is mandatory, not permissive or directory. The requirement is that the increased tax "shall be annually assessed and levied." That is in effect a legislative levy of the tax, putting an end to any municipal or other local discretion in the matter. State ex rel. Minneapolis F. D. Relief Assn. v. City Council, 161

Minn. 103, 200 N. W. 932. There can be no other construction. The new statute, L. 1931, p. 135, c. 118, discloses no intention that its operation should await the consent of the city council or anyone else. Relator was already incorporated and operating under the statute amended. The Minneapolis home rule charter, whatever its provisions, cannot except or exclude relator from any burden or benefit of subsequent legislation which the legislature intends to impose or bestow. That the 1915 law was in the nature of a grant of power, conditioned upon consent of the city council, in no way deprived subsequent legislatures of the power to impose new conditions or grant new benefits. As far as that was done by L. 1931, p. 135, c. 118, it was unconditional. The condition of local consent called for by the law of 1915 had been exercised and so made functus officio. The new law carries no such condition, is mandatory, and so ends the inquiry.

Judges have no general power of revision or veto of taxes. Their levy is for the legislative power. So also is their abatement. We can afford no escape for respondents from the duty of levying the new and additional tax, however onerous it may be. The law is within the constitutional competence of the legislature. Its purpose is too plain to permit us to cut it down by a decision that it means otherwise than it says.

There must be a reversal. Whether it is too late, for practical reasons, to have the levy made a part of the taxes for 1932 must be determined below. But the substantive right has so much future importance that, whatever can or cannot be done as to the 1932 tax, we should not dismiss the case as moot.

Order reversed.

OLSEN, JUSTICE, took no part in the consideration and decision of this case.