STATE EX REL. BOARD OF EDUCATION AND ANOTHER v. AL P. ERICKSON.
STATE EX REL. R. J. AHLSTROM v. AL P. ERICKSON.[1]

November 28, 1933.

No. 29,845.

[1]Reported in 251 N. W. 519.

*Frank J. Williams,* Assistant County Attorney, for appellant (respondent below).

*Brill & Maslon,* for respondents Board of Education of Minneapolis and Central Council of Teachers' Organizations of Minneapolis (relators below).

*Arthur LeSueur,* for respondent R. J. Ahlstrom (relator below).

*C. J. Rockwood* and *Hugh H. Barber,* amici curiae, filed a brief in behalf of the contention of appellant.

*DEVANEY, Chief Justice.*

This is an appeal by Al P. Erickson as county auditor of Hennepin county from judgment of the lower court making peremptory two alternative writs of mandamus growing out of two actions consolidated below because identical in objective.

October 17, 1933, the board of education of the city of Minneapolis made its annual tax levy pursuant to the provisions of the city charter hereinafter set forth. The tax rate fixed by that levy was 20 mills on each dollar of assessed valuation of taxable property. Chapter XVIII, § 6, of the charter states that such annual levy "shall not exceed 22 mills." In accordance with this chapter, on October 18, 1933, the levy was returned to defendant auditor. The board of estimate and taxation previously fixed a maximum of 17.5 mills for any and all levies made by the board of education. The defendant auditor elected to disregard the levy of the board of education and follow that of the board of estimate and taxation. He was commanded by the judgment of the lower court to accept the levy of the board of education, and this appeal follows.

Pursuant to art. 4, § 36, of the state constitution a charter was adopted by the city of Minneapolis for its government. This charter is almost wholly a reënactment of the applicable general laws, together with the special laws then in effect, relating to the government of the city of Minneapolis. Chapter XV of the charter, relating to the board of estimate and taxation, is substantially a reënactment of L. 1919, c. 252, which, although general in terms, related only to Minneapolis. Chapter XVIII of the charter, relating to the board of education, is a reënactment of special and general legislative acts defining the powers and duties of that board beginning with L. 1878, c. 157, the law of its creation, and increased through L. 1919, c. 253. A charter amendment in 1921 broadened the board's powers and fixed the maximum tax levy by it to be imposed for purposes of education at 22 mills. To focus attention on the precise provisions of the city charter under consideration, they are here set forth. The relevant portions of c. XVIII, relating to the powers and duties of the board of education, read as follows:

"Sec. 6. **Tax levy—amount—purposes—**Said board of education is hereby authorized and empowered to levy upon the taxable property in said city, in each and every year, such taxes as will raise sufficient sums of money for all school purposes, of every character in said city, including the purchase and acquisition of school sites and buildings, the construction and erection of school buildings, the payment of expenses incident to the maintenance thereof, the prompt payment of all indebtedness of said district, the payment of salaries and compensation of school officers, teachers and employes of the school district, the support and maintenance of evening and summer schools, educational work among immigrants, candidates for naturalization and removal of illiteracy, vocational and part-time work, and such other educational activities as may be authorized, and the defraying of the cost of the general operation and maintenance of the public schools in said district, provided, that the aggregate annual levy of such taxes in any one year, exclusive of state and county school taxes, shall not exceed 22 mills on each dollar of the assessed valuation of the taxable property of

the city as determined by the last assessment for city, state and county purposes.

"Sec. 6a. **Tax levy—rate**—The board shall make return of its annual levy of taxes on or before the first (1st) day of November of every year, to the county auditor of the county of Hennepin, and such taxes shall be collected and the payment thereof enforced with and in like manner as state and county taxes are collected and the payment thereof enforced, and when collected shall, together with all costs, interest and penalties collected thereon, be paid over by the county treasurer to the city treasurer of the city of Minneapolis, as treasurer of the board of education, as often as said county treasurer is required to make settlement with said city treasurer in respect to city taxes; provided, however, that if for any reason said board shall in any year fail to make returns of its annual levy and taxes to the county auditor, by the time herein specified, in such case the rate of taxation determined and fixed by the board of estimate and taxation as the maximum rate which said board of education shall levy for such year shall be taken to be the rate of taxation determined upon by said board of education for such year, and the county auditor shall govern himself accordingly; and any taxes which have been heretofore or shall hereafter be extended upon the tax lists of Hennepin county by the county auditor of said county, based upon the action of the board of estimate and taxation, said board of education having for any reason failed to make a return as herein provided, shall be and remain legal and valid."

The relevant sections of c. XV relating to the board of estimate and taxation read as follows:

"Sec. 2. **Budgets to be submitted to board**—The city council, and every board and department of the city having any power to levy taxes, shall on or before the first day of September of each year, submit to the board of estimate and taxation a budget showing the estimates of its needs for the year, commencing on the first Monday in January next following for each fund under its control, and the board of estimate and taxation shall, on or before the 15th day of October of each year fix and determine the maximum amount

of money and maximum rate which may be raised in the aggregate by general taxation by the city council, board or department for each such fund, and no general taxes shall be levied in such year in excess of the amounts so fixed. Provided, that the board of education may submit its budget on or before the first day of April in each year and the board of estimate and taxation shall in that case fix the maximum of the moneys to be raised by taxation for the purposes of the board of education on or before the first day of May next following. The board of estimate and taxation shall as soon as practicable prescribe a form or forms and the classification of titles for the budget estimates of the city council and of every board and department of the city having any power to levy taxes, and the form or forms and the classification of titles so prescribed shall thereafter be followed and complied with by each department in preparing budget estimates."

"Sec. 7. **Levying and collection of taxes**—All taxes may be levied and collected within the maximum fixed by statute and within the maximum fixed by the board of estimate and taxation for the various purposes of said taxation and without regard to the maximum rate of taxation fixed from time to time by any board other than the boards and departments governed by this chapter."

The issue of law presented by this appeal arises from an apparent conflict in the matter of taxation between the foregoing provisions. The fundamental of rules of construction is to ascertain and to give effect to the intention of the legislature as expressed in the language used. State ex rel. Benson v. Peterson, 180 Minn. 366, 370, 230 N. W. 830; State ex rel. Hilton v. Essling, 157 Minn. 15, 18, 195 N. W. 539; Cone v. Nimocks, 78 Minn. 249, 253, 80 N. W. 1056; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 8940. Where the intent is left in doubt, the court should consider the object to be accomplished, the consequences which will follow from adopting one or the other possible construction, as well as the legislative policy in respect to the subject matter.

"In fact, all pertinent matters bearing directly upon the object and purpose of the law, and tending to its illumination and a dis-

closure of the intention of its framers, are legitimate subjects for consideration by the court in assigning to it its appropriate place among the laws of the state." State v. Twin City Tel. Co. 104 Minn. 270, 285, 116 N. W. 835, 836.

Rules of construction frequently adverted to by this court are of assistance in reaching a sound and just conclusion. Where general and specific provisions of a law are in conflict, it is held that the specific and not the general controls. Cohen v. Gould, 177 Minn. 398, 405-406, 225 N. W. 435; State ex rel. Princeton v. District Court, 179 Minn. 90, 93, 228 N. W. 444; City of St. Paul v. Johnson, 69 Minn. 184, 186, 72 N. W. 64. Considering the time of the enactment of L. 1919, c. 253, it may well be that the rule of construction that where there is a conflict the law later in point of original enactment will control has a persuasive bearing on the conclusion reached herein. Klasen v. Thompson, 189 Minn. 254, 248 N. W. 817; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 8961. It is also an accepted and helpful rule of statutory construction that the court will, whenever possible, construe a statute as a whole, so as to avoid conflict with constitutional and other statutory provisions and so as to give effect to all its terms. Abramowitz v. Continental Ins. Co. 170 Minn. 215, 218, 212 N. W. 449; Waldo v. Gould, 165 Minn. 128, 132, 206 N. W. 46; for further cases see 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 8951, note 65. Obviously, a conclusion which would sustain the right of the board of estimate and taxation to fix a maximum tax levy for the board of education disregards §§ 6 and 6a of c. XVIII of the city charter, which expressly empowers the board of education to levy taxes for its corporate purposes up to the maximum fixed in that chapter. Such a conclusion would immediately present for determination the question of the validity of such an alleged limitation of the powers of the board of education. This court will avoid reaching a result that fails to give effect to and fails to reconcile apparently conflicting provisions of this charter unless such a conclusion is inescapable. In our opinion such a conclusion is here avoidable.

Art. 8, §§ 1 and 3, of the state constitution charges the legislature with the duty of creating and maintaining a general and

uniform system of public schools. Under this provision the legislature is granted plenary powers over all matters relating to public schools excepting only as the same are restricted by constitutional provisions. State v. Delaware I. Co. 160 Minn. 382, 386, 200 N. W. 475. Recognizing the existence of a limited local interest in the matter of education, this court so frequently has affirmed the doctrine that the maintenance of the public schools is a matter of state and not of local concern that it is unnecessary further to review the authorities at this date. Associated Schools v. School Dist. No. 83, 122 Minn. 254, 257-258, 142 N. W. 325, 47 L.R.A.(N.S.) 200; State v. Delaware I. Co. 160 Minn. 382, 385, 200 N. W. 475.

Acting pursuant to constitutional mandate, the legislature by L. 1878, c. 157, created the board of education of the city of Minneapolis as a distinct and separate corporate entity. It has continued so to exist since. It was by express terms of this enactment clothed with the power to maintain, and charged with the duty of maintaining, the educational system of the city of Minneapolis. Board of Education v. Houghton, 181 Minn. 576, 233 N. W. 834. This we believe is a clear expression of legislative policy which should not be disregarded. This consideration may not be applicable to other boards or departments of the city of Minneapolis. These questions are not before us, and we cannot with reason here examine them. Pursuant to art. 4, § 36, of the state constitution, a charter was adopted by the city of Minneapolis for its government. Chapter XVIII thereof provides for a board of education charged with the duty of providing for an efficient and adequate system of education and clothed with substantially the same powers for the performance of that duty as were granted to it under the original law of its creation, including the power to levy taxes up to a maximum fixed therein. Nowhere in that chapter is there any additional limitation placed upon this board, nor is there any provision there subjecting to the supervision or authority of any other body its power to levy taxes for the purpose of raising funds with which to perform its express duties. There are numerous state statutes dealing expressly with the matter of education. 1 Mason Minn. St. 1927, §§ 3015-3021, provides for establishment of school

libraries; 1 Mason Minn. St. 1927, §§ 2871-2883, prescribes certain methods of conducting school; 1 Mason Minn. St. 1927, §§ 2958-2972, provides for state board of education; L. 1929, c. 388, requires teachers' certificates. These statutes and many others by their terms impose both duties and restrictions upon the board of education which it must perform and by which it is bound. City charter provisions must be in harmony with and subject to the legislative policy of the state as expressed in these and other statutes. Accordingly, in Board of Education v. Houghton, 181 Minn. 576, 233 N. W. 834, the court refused to construe c. XIII of the charter of the city of Minneapolis so as to require the board of education to submit its plans for the erection of school buildings to the city planning commission for approval. The court indicated that a contrary construction would bring that provision in conflict with the legislative policy of the state and render it invalid. No significance was attached to the fact that a member of the board of education was also a member of the planning commission. No greater weight can be given to the same circumstance here. The fact that the board of education is to furnish the board of estimate and taxation with budgets is easily explainable otherwise than as an indication of an intention to subject, and the necessity of subjecting, the former to the authority of the other to reduce its tax levy. In the Houghton case, 181 Minn. 576, 233 N. W. 834, the planning commission of Minneapolis claimed no more than the power to veto the location and design of school buildings. The state board of education had and still has no more authority over the erection of school buildings than a veto power if the proposed buildings do not meet with its requirements. L. 1913, c. 550, § 6 (now superseded by 1 Mason Minn. St. 1927, §§ 2958-2972, which created the state board of education to replace the superintendent of education, see Board of Education v. Houghton, 181 Minn. 576, 580, 233 N. W. 834). Nowhere was it claimed that the state board of education could require or compel the erection of school buildings in Minneapolis against the will of the board of education. There could therefore be no conflict between the state board of education and the power there claimed for the planning commission. The only

possible overlapping of authority would be the imposition of an additional veto on the building program of the local board of education by the planning commission over and above the veto of the state board of education. It was due to that relationship alone that this court said in the Houghton case, 181 Minn. 581:

"If the charter had provided that the planning commission or any other municipal body should have a veto power over all actions of the state commissioner of education in the exercise of his hereinbefore described duties and powers under the state law and could substitute the local determination in place of those of the commissioner, such charter provision would undoubtedly be invalid. The same construction must be reached as to the limited infringement here contended for by appellant."

The "limited infringement" referred to was the claimed right of a body not charged with the duty to provide for education to interpose an additional obstacle in the way of the local board of education in the performance of that duty with which it was expressly charged. Exactly the same kind of infringement condemned in that case appears in the instant case under the construction contended for by the appellant. Under such a construction of c. XV of the charter there would again be present a case in which another local board, not charged with any duty as to education, asserts a veto power over the board of education in Minneapolis in addition to the one conceded to the state board. Such a construction is in conflict with the legislative policy of the state as to education as expressed by this court, and if adopted would render it invalid.

There can be no question of the power of the state to delegate the duty to provide education to a municipal body. This power of the legislature is not exhausted by exercise. To insure "a thorough and efficient system" of education (cf. State ex rel. Smith v. City of St. Paul, 128 Minn. 82, 91, 150 N. W. 389) the body to which that duty has been designated should be provided with the necessary funds or power to raise funds adequate for the proper performance of that duty. To place the duty to provide education in one board and power in another which has no such duty to prevent its per-

formance runs contrary to the policy of our state with regard to education as expressed in the decisions of this court.

We are not unmindful of the value of the board of estimate and taxation and its place in the general scheme of administration in the government of the city of Minneapolis. Our construction of the applicable charter provisions relating to this board preserves its functions. On the other hand, we must be guided in our determination of the proper construction of these provisions not only by rules of statutory construction but also by considerations of legislative policy of this state as to education as announced by this court and as embodied in our statute created pursuant to constitutional mandate which charges the legislature with the duty and obligation of maintaining a thorough and efficient system of education. To accept the narrow and literal construction of the pertinent provisions of c. XV as contended for by the appellant would require an abandonment of this policy as to education declared by the legislature of this state in its enactment of the statute originally creating the board of education of the city of Minneapolis in 1878 and which has continued in subsequent legislation to the present date. Such a step, if it is to be taken, can only be at the express command of the legislature. Based upon the foregoing considerations, it is our opinion that c. XV cannot be construed so as to deprive the board of education under the provisions of c. XVIII, which charges it expressly with the duty of providing and maintaining a thorough and efficient system of education, from the power of doing so under the express terms thereof.

Judgment affirmed.

*STONE, Justice* (dissenting).

The charter provisions in question, other than the 1921 amendment of § 6 of c. XVIII, were but a reënactment and adoption for local purposes of existing law. In such case the old mandate is not repealed or amended but simply remains law. Nelson v. County of Itasca, 131 Minn. 478, 155 N. W. 752; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 8925. That premise applies no less to reënactment of existing law for the restricted area and subjects of a city than to the broader field of state jurisdiction.

Inasmuch as the existing laws concerning the board of estimate and taxation and the board of education of Minneapolis were simply adopted or reënacted by the charter, there is another control (not a mere "aid") of construction to be consulted. It is the rule that if in such a case there is conflict the law later in point of original enactment will control. Olson v. Oneida Mines Co. 153 Minn. 80, 189 N. W. 455; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 8961. In this case the board of estimate and taxation law is the later, barring only the amendment of § 6 of the chapter on education in 1921.

The new law introduced by that amendment, while not relevant to the present issue, was accompanied by a reënactment and continuation of the existing general grant of taxing power to the board of education which is not only relevant but in a way quite cogent. As far as the amendment was a reënactment of existing law, it is within the rule that such a reënactment "does not repeal an intermediate act which qualifies or limits" the earlier law reënacted. "Such intermediate act will be deemed to remain in force, and to qualify or modify the new act in the same manner as it did the first." Gaston v. Merriam, 33 Minn. 271, 283, 22 N. W. 614, 621; Hill v. Village of Aurora, 157 Minn. 469, 196 N. W. 465.

So anxious were the people of Minneapolis to confirm and continue the existing mechanism of their municipal administration that, when the home rule charter was enacted in 1920, it carried in its concluding chapter (c. XX, § 2) a provision not only that the city as such, but that its several boards and departments, in addition to all the rights and powers conferred upon them by the charter, should "also have" all others "possessed, performed, exercised, or enjoyed * * * at the time of the adoption of this charter."

The present problem is whether the annual tax levy of the board of education is final or subject to review and possible reduction by the board of estimate and taxation. Has the latter board the power to reduce the levy of the former? I think it has, and cannot see how the opposite view is tenable on any permissible construction of applicable charter provisions which, it cannot be too much emphasized, were statutory in point of origin. Their meaning

as statutory law has not been changed by their translation into municipal charter law.

Antedating the board of estimate and taxation for the city of Minneapolis, there was the board of tax levy for the whole county of Hennepin, including the city. The history of the latter board and its relation to the former are sufficiently gone into in State ex rel. City of Minneapolis v. Erickson, 157 Minn. 200, 195 N. W. 919. There it is held that the board of estimate and taxation now has the powers formerly possessed by the board of tax levy over matters of city taxation. The opinion is of present importance as far as it considers § 7 of c. XV of the charter and the authority thereby given for the collection of taxes "within the maximum fixed by statute and within the maximum fixed by the board of estimate and taxation * * * without regard to the maximum rate of taxation fixed from time to time by any board other than the boards and departments governed by this chapter." The conclusion was that the board of estimate and taxation has the exclusive authority over city taxes to the exclusion of the board of tax levy. The latter board is the one meant by "any board other than the boards and departments governed by this chapter." Obviously the board of estimate and taxation could not levy taxes "without regard" to the maxima fixed by the several city departments and boards, all of which were to be reviewed and effectuated, as far as determined advisable, by the board of estimate and taxation. The situation existing at its original adoption makes this language of § 7 susceptible of easy interpretation. Applied to its subject matter, there is no ambiguity unless construction is first used to create one.

Section 7 out of the way, reference to the other provisions of c. XV makes plain the purpose that the board of estimate and taxation should have a supervisory, coördinating, and limiting function, in the whole field of its operation, within which the board of education is specially included. Its objective, as stated in the title of the original act of 1919 (c. 252), is the "regulating" of "taxation, finance and indebtedness" in the city whose fiscal administration is the sole subject of the law.

In the general declaration of § 2 concerning budgets, the board of education is covered by special permission for the submission of its budget on or before April 1. Follows a mandate to the board of estimate and taxation that it "shall in that case fix the maximum of moneys to be raised by taxation for the purposes of the board of education" on or before May 1. At that time of the year, the only practicable way of fixing such maximum would be in money aggregate rather than rate of levy.

Section 8 of c. XV gives the board of estimate and taxation "access [at all times] to all the boards and departments of the city and to all accounts, contracts, records and files thereof," and the right "to call upon every board or department and every member and employe for any information it may deem necessary." If, as argued for relators, the only purpose of submitting to it the education budget was to inform the board of estimate and taxation of the amount thereby required, it would be futile to give them the right to verify the budget requirements by independent investigation as contemplated by § 8. Similar in implication is § 11 of c. XV, requiring the board of estimate and taxation to hold "public hearings in connection with the determination of maximum amounts or maximum rates to be allowed to the different bodies, boards or commissions having power to levy taxes."

So, taken as a whole, it is unthinkable to me that, by the law of its creation, there was excepted from the final revisory power of the board of estimate and taxation the tax levies of the board of education.

Neither as it stood originally nor as amended is there a word in c. XVIII, concerning the board of education and its powers, to suggest other conclusion. When c. XV and c. XVIII are read together, in application to their subject matter, that of taxation for school purposes being common to both, there is no conflict of meaning, although there may arise, as there has now, under stress of depression, a conflict of opinion. Such disagreement between two statutory boards is entirely different from a conflict between the laws governing the two. There is no conflict in subjecting the decision of one tribunal to review and revision by another. The re-

sult is not even conflict of jurisdiction. It is the familiar one of subjection of the decisions of one tribunal to review and control by another. The board of education has the original power to make its tax levy, subject to review and revision by the board of estimate and taxation. The duty of the latter board to fix the maximum is plain. It is expressly required by the provisions of § 6a "that if for any reason said board shall in any year fail to make returns of its annual levy and taxes to the county auditor, by the time herein specified, in such case the rate of taxation determined and fixed by the board of estimate and taxation as the maximum rate which said board of education shall levy for such year shall be taken to be the rate of taxation determined upon by said board of education."

The presumption is that all public officials will do their duty. So it is no more to be presumed that the board of education will in any year fail to fix a maximum than that the board of education will omit the regular tax levy.

"Taxation for municipal purposes is purely a matter of municipal character." State ex rel. City of Minneapolis v. Erickson, 157 Minn. 200, 206, 195 N. W. 919, 921. But, it is argued for relators, taxation for educational purposes is a matter of state concern. So it is except as the state itself has declared it one for local decision. It has done that by statute explicitly providing for a county and a "district school tax." 1 Mason Minn. St. 1927, § 3012. So, notwithstanding that education is its beneficiary, we are dealing with what, after all, is a matter of local taxation, its character as such fixed by state and municipal law. The levy is made by local authority, and not by direct action of the state legislature as was the case in State ex rel. Minneapolis F. D. R. Assn. v. City Council, 161 Minn. 103, 200 N. W. 932, and State ex rel. Minneapolis P. R. Assn. v. City Council, 188 Minn. 447, 247 N. W. 514. There is nothing in the powers of the board of estimate and taxation in contravention of state policy as expressed in constitution and acts of legislature. That phase of the matter is sufficiently dealt with in State ex rel. Smith v. City of St. Paul, 128 Minn. 82, 150 N. W. 389. There is no constitutional or other legal objection to such a check

on local taxation for educational purposes as may be imposed by the board of estimate and taxation of the city of Minneapolis functioning within the power conferred upon it by law. There is nothing to the contrary in Board of Education v. Houghton, 181 Minn. 576, 233 N. W. 834, where, largely from considerations of statute as distinguished from municipal legislation, it was considered that the Minneapolis planning commission did not have the supervisory jurisdiction over the erection of school buildings which in that case it had attempted to exercise.

I deny the supposed "policy" which, as hypothesis and nothing more, is the *sine qua non* of the conclusion reached by my brethren of the majority. No such policy is expressed either in constitution or statute. This court has no power to fix such a policy and so has not done so however any of its decisions may be read. It would be usurpation of the state lawmaking power of the legislature and of the municipal lawmaking power of the people of Minneapolis for us to attempt to do so. We deal here with a matter of local taxation, made so by express mandate of the legislature explicitly providing for a county and a "district school tax." 1 Mason Minn. St. 1927, § 3012. That aside, I submit that the state "policy" argument of the majority is barred by the simple fact it silently ignores, that the board of estimate and taxation is a creature and chosen agency of state "policy." It was set up by the legislature itself in 1919.

If this decision stands, the same result must follow as to all other taxing boards of the city of Minneapolis, including the city council. They have precisely the same power of levying taxes as the board of education. So the board of estimate and taxation, set up by the legislature, *as a matter of state "policy,"* and continued by the city to preserve due balance between the various taxing bodies and prevent excessive taxation, will be reduced to vacuous nothingness.

Were I passing upon the issue economically or sociologically, I might indulge my pro-educational leanings; particularly those in favor of teachers in the "grades," who labor so assiduously at the very foundations of the training of our youth. But the issue for

us is not one of economics or sociology.  It is one of the meaning of a written law, to the authority of which we owe obedience.  Being unable to find any ambiguity justifying resort to construction, and being equally unable to find anywhere evidence of a state policy such as that supposed in the majority opinion, I cannot yield assent thereto.

*LORING, Justice* (dissenting).

I concur in the opinion of Mr. Justice Stone.

