STATE EX REL. DALE M. STANCHFIELD AND OTHERS
v. EMMETT D. SALISBURY.
GEORGE P. PHILLIPS, INDIVIDUALLY AND AS PRESIDENT
OF MINNEAPOLIS CENTRAL LABOR UNION, WALTER
F. JORGENSON, AND BOARD OF EDUCATION OF
CITY OF MINNEAPOLIS, INTERVENERS.[1]

April 29, 1949.

No. 34,943.

*John F. Bonner,* City Attorney, and *Palmer B. Rasmusson,* Assistant City Attorney, for relators.

*Josiah E. Brill,* for respondent.

*Charles A. Sawyer,* Assistant City Attorney, for intervener Board of Education of City of Minneapolis.

*John A. Goldie* and *Samuel I. Sigal,* for interveners George P. Phillips and Walter F. Jorgenson.

[1]Reported in 37 N. W. (2d) 444.

FRANK T. GALLAGHER, JUSTICE.

This proceeding was commenced by the issuance of a writ of quo warranto out of this court upon an information presented to the court with the consent of the attorney general.

Relators are Dale M. Stanchfield and 13 other members of the city council of the city of Minneapolis. The purpose of the proceeding is to determine the right of respondent, Emmett D. Salisbury, to sit as a member of the board of education of the city of Minneapolis. Subsequent to the issuance of the writ, separate orders were made permitting intervention by George P. Phillips, individually and as president of the Minneapolis Central Labor Union, and Walter F. Jorgenson, and by the board of education of the city of Minneapolis.

Roy Weir, a qualified member of the board of education, whose term would expire in July 1951, was elected to congress in November 1948 and resigned his position on the school board on December 29 of that year. Thereafter, the board of education attempted to fill the vacancy caused by Weir's resignation by attempting to elect respondent to the board. It is by virtue of this attempted election that respondent asserts his claim to the right to serve as a school director on the board of education.

The question for determination by this court is whether M. S. A. 125.03 is applicable to the board of education of the city of Minneapolis so as to empower it to fill vacancies on its school board.

The board of education of the city of Minneapolis was organized under Sp. L. 1878, c. 157. Jackson v. Board of Education, 112 Minn. 167, 127 N. W. 569; State ex rel. Bd. of Education v. Erickson, 190 Minn. 216, 251 N. W. 519; Board of Education v. Erickson, 209 Minn. 39, 295 N. W. 302. That law was amended thereafter, as then constitutionally permitted, by a law enacted as Sp. L. 1887, c. 22, by striking out any provisions relative to the times and manner of election and the terms of office of members of the board of education which were in conflict with any of the provisions of the charter of Minneapolis relating thereto. The 1887 amendment also provided that in determining the terms of office and the times and manner

of election of members of the board of education the provisions of the legislative charter of the city of Minneapolis should govern insofar as the same were in conflict with the act. At the same time that the above amendment was adopted, the legislative charter of the city of Minneapolis was amended by the enactment of Sp. L. 1887, c. 10, which among other things provides as follows:

"For the purposes of this chapter, it is to be understood that the board of park commissioners, the board of education and library board are boards having the management of branches of the city government. [p. 434.]

\* \* \* \* \*

"All vacancies, except as hereinbefore provided, shall be filled by the city council. [p. 436.]

\* \* \* \* \*

"Any provision of this charter or of the charters of the board of park commissioners, or the board of education, or of the library board, inconsistent with this chapter of the city charter is hereby repealed, and in construing any act creating any of said boards, the provisions of this chapter shall be considered as a part thereof. [p. 437.]"

In 1920, the city of Minneapolis adopted a home rule charter pursuant to Minn. Const. art. 4, § 36, and incorporated all special and general laws relating to Minneapolis education into Chapter 18 of the charter. Board of Education v. Erickson, 209 Minn. 39, 295 N. W. 302. All other rights, powers, and functions possessed by any board or body under the legislative charter were reserved in the home rule charter as c. 20, § 2, which provides as follows:

"The City of Minneapolis and the several Boards and Departments of said city, in addition to all the rights, powers, duties, functions, privileges and immunities expressly conferred upon and vested in them or any of them under and by virtue of the provisions of this Charter, shall under this Charter also have, possess, perform, exercise and enjoy all other rights, powers, duties, functions, privileges and immunities held, possessed, performed, exercised or enjoyed by

said city and its several departments and boards respectively at the time of the adoption of this Charter."

The provision as to vacancies was also carried forward at the time the 1920 home rule charter was adopted, as c. 2, § 1, designates as elective officers, among others, a mayor, members of the city council, and members of the board of education, and § 19 of the same chapter again provides that "All vacancies, except as herein provided, shall be filled by the City Council." Section 18 provides that the only vacancies to be filled by special elections are those in the offices of mayor and aldermen. Inasmuch as there appears to be no provision in the charter for filling vacancies on the board of education except by the city council, it would appear that such power rests with the city council unless changed by M. S. A. 125.03, which provides:

"A vacancy in any school board or board of education elected by the people shall be filled by the board at any legal meeting thereof until such vacancy can be filled by election at the next annual meeting or election. Such appointment shall be evidenced by a resolution entered in the minutes. All elections to fill vacancies shall be for the unexpired term."

It is the contention of respondent that this situation was changed by the enactment of § 125.03; that this section applies to the filling of vacancies on all school boards, whether common, independent, or special school districts, if elected by the people; and that, inasmuch as respondent was elected by the board of education to fill the Weir vacancy, whose term would have expired in July 1951, respondent's election would be valid until the next general city election. Chapter 18, § 2, of the Minneapolis home rule charter provides in part as follows:

"* * * All the School Directors shall serve until their successors have been elected and have qualified. In case any School Director shall die, resign, or remove from the district, or otherwise vacate his office, more than one year before the expiration of his term of office, a School Director may be chosen at the next general city election

after such vacancy shall occur to fill the place of the director so vacating."

There is no dispute about the fact that members of the board of education of the city of Minneapolis are elected by the people. There is a serious dispute, however, between the opposing parties whether § 125.03 applies to the special school district of Minneapolis so as to give the board of education the power to fill vacancies on its own board instead of having such vacancies filled by the city council. Relators argue that § 125.03 does not apply to Minneapolis, inasmuch as there is no express provision therein that it is to modify any home rule charter or any special acts of the legislature, and that by its own provisions it applies only to districts having an annual meeting or election. The city election in Minneapolis is held biennially.

We have already said that the board of education of the city of Minneapolis was organized under Sp. L. 1878, c. 157, amended by Sp. L. 1887, c. 10, which latter law has never been repealed. Therefore, there can be no dispute, so far as determining the question before us, that the Minneapolis school district is a special school district organized under special laws. See, Jackson v. Board of Education, 112 Minn. 167, 127 N. W. 569; State ex rel. Bd. of Education v. Erickson, 190 Minn. 216, 251 N. W. 519; Board of Education v. Erickson, 209 Minn. 39, 295 N. W. 302, *supra*. We have also said that the home rule charter adopted by the city of Minneapolis in 1920 incorporated all special and general laws relating to Minneapolis education into chapter 18 of the charter. See, Board of Education v. Erickson, *supra*.

With reference to the subject of vacancies on school boards and boards of education, L. 1899, c. 193, § 1, provides:

"In case the office of any member or director of any school board or board of education of any school district or city in the State of Minnesota, whose members are now or hereafter elected by vote of the people, shall become vacant by reason of death, resignation, removal from the district, or other cause, the said board may fill such

vacancy by appointment until the vacancy can be filled for the unexpired term of such office by election by vote of the people."

This chapter was expressly repealed by R. L. 1905, § 5543, and was followed by *Id.* § 1316, which provides:

"A vacancy in any school board or board of education elected by the people shall be filled by the board at any legal meeting thereof until such vacancy can be filled by election at the next annual meeting. Such appointment shall be evidenced by a resolution entered in the minutes. All elections to fill vacancies shall be for the unexpired term."

It will be noted that in the latter section the words "or city" were eliminated.

It is the position of the attorney general in his letter to the commissioner of education dated January 8, 1949, that by reference to "any school board or board of education" in R. L. 1905, § 1316, the legislature intended to refer only to the school board or board of education of a common or independent school district. He contends that this is apparent from the report of the statute revision commission appointed under L. 1901, c. 241. In that report to the legislature in January 1905, c. 14, which includes § 1316, he quotes the revision commission as saying:

"* * * For the purpose of condensation we have combined provisions applicable to common and independent school districts, thus avoiding the necessity of repeating the same."

He therefore contends that it is clear that § 1316 was intended to apply only to common and independent school districts, and in this his position appears tenable.

R. L. 1905, § 1316, was amended by L. 1909, c. 187, § 3 (which amendment is Mason St. 1927, § 2811) to read as follows:

"A vacancy in any school board or board of education elected by the people, shall be filled by the board at any legal meeting thereof until such vacancy can be filled by election at the next annual meeting, in school districts containing less than ten townships, and

at the next general biennial state election in school districts embracing or containing ten or more townships. Such appointment. shall be evidenced by a resolution entered in the minutes. All appointments and elections to fill vacancies shall be for the unexpired term."

It will be noted that in this amendment the words "in school districts containing less than ten townships, and at the next general biennial state election in school districts embracing or containing ten or more townships" were added to § 1316, as were also the. words "appointments and."

Comparing the language used in Mason St. 1927, § 2811, as amended by L. 1941, c. 169, art. 6, § 3 (M. S. A. 125.03), we find that the 1941 amendment changes § 2811 by adding the words "or election" after the words "at the next annual meeting," and by deleting the words "in school districts containing less than ten townships, and at the next general biennial state election in school districts embracing or containing ten or more townships." It also deletes the words "appointments and," so as to make § 125.03 read in part: "All elections to fill vacancies shall be for the unexpired term" instead of "All appointments and elections," as provided in § 2811.

M. S. A. 125.04 provides as follows:

"If the board shall fail for ten days to fill any vacancy, a special meeting or election may be called for that purpose by ten days' posted notice signed by three qualified voters, freeholders or householders of the district, setting forth the object of the meeting or election. Officers elected at such meeting or election shall hold for the unexpired term, but no such meeting or election shall be held within 30 days before the annual election or annual meeting in districts containing less than ten townships nor within 30 days before the general biennial state election in districts embracing or containing ten or more townships."

This section is identical with Mason St. 1927, § 2812, except that the words "or election" are inserted after the word "meeting"

wherever it appears in § 2812. It will be noted that the language classifying school districts on the basis of number of townships in § 125.04 is omitted in § 125.03. Respondent and intervener board of education concede in their brief that this "is a bit confusing," but they contend that this classification on the basis of the number of townships refers to common school districts.

Interveners Phillips and Jorgenson call our attention in their brief to the report of the interim committee on education submitted to the 1941 legislature, where it stated among other things that "Care was taken in this rearrangement not to alter the substance of the law." Respondent and intervener board of education explain in connection with the above statement that interveners Phillips *et al.* have overlooked the fact that the principal change was made by amendment in the education committee of the state senate and not by the interim committee.

It is our opinion, after a careful perusal of the laws involved, the historical background, and the practical facts that § 125.03 is not applicable to the special school district of Minneapolis, organized under special laws, the provisions of which special laws were incorporated by the city in the adoption of chapter 18 of its home rule charter.

With reference to the question whether a special statute will be construed as repealed or modified by a subsequent general act unless the intent to repeal or alter the special law is manifest, this court said in State ex rel. Seng v. Peter, 101 Minn. 462, 464, 112 N. W. 866, 867, quoting from 1 Sutherland, Statutory Construction, 274:

"* * * 'a special statute providing for a particular place, or applicable to a particular locality, is not repealed by a statute general in its terms and application, unless the intention of the legislature to repeal or alter the special law is manifest, although the terms of the general act would, taken strictly and but for the special law, include the case or cases provided for by it.'"

In State ex rel. Metcalf v. Baker, 114 Minn. 209, 211, 130 N. W. 999, where it was held that a general statute affecting the jurisdiction of justices of the peace could not be construed to modify a preëxisting statute relative to the same subject incorporated in the home rule charter of the city of St. Paul, this court said:

"* * * we are clear that the enactment of the statute in 1909 should not be construed as a repeal or modification of the special statutes creating justice courts for the city of St. Paul. That such was the purpose of the statute is made at all plausible only by strained inference, and not from anything contained in its language, or in the history of its enactment. It contains no clause repealing 'acts or parts of acts inconsistent therewith,' and we apply, in construing it, the rule laid down in State [ex rel. Seng] v. Peter, 101 Minn. 462, 112 N. W. 866."

In State v. Anderson, 63 Minn. 208, 65 N. W. 265, it was held that Sp. L. 1889, c. 34, entitled "An act to consolidate and amend the several acts relating to the municipal court of the city of Minneapolis," did not repeal by implication a special provision of the city charter relating to the same subject.

In State ex rel. School Dist. v. Bailer, 91 Minn. 186, 97 N. W. 670, it was held that a special law providing that all proceeds from licenses granted for the sale of intoxicating liquor should be appropriated to school purposes and paid to the treasurer of the school district was not repealed by a later law requiring that money from these licenses should be distributed one-half to the county treasurer to be placed in the county road and bridge fund and one-half into the treasury of the township. See, also, Phelps v. City of Minneapolis, 174 Minn. 509, 219 N. W. 872.

Our attention has been called to conflicting opinions issued out of the office of the attorney general in connection with the question whether a vacancy in the membership of the board of education of the city of Minneapolis should be filled by the board of education or by the city council. In one opinion, dated November 24, 1948, it was the position of the writer that the board of education had

·the power to fill such vacancy. That opinion was modified and superseded by another written January 8, 1949, by the Honorable J. A. A. Burnquist, attorney general, which concluded as follows:

"It is, therefore, my opinion that the council of the City of Minneapolis has the power to fill the present vacancy on the city's Board of Education, and the opinion of November 24, 1948, relative to the filling of such vacancy by that board, is hereby modified and superseded."

By way of precedent as to the manner in which vacancies have been filled in the past in connection with the board of education, the record contains a stipulation dated February 10, 1949, signed by the attorneys for the various parties here involved. The stipulation states in part that the only fact question raised in this case relates to that of practical construction, and the parties have agreed upon and submitted a statement of facts to be considered by the court with the same force and effect as if oral and documentary evidence had been submitted. With reference to the board of education of the city of Minneapolis, the facts, briefly stated, as provided in the stipulation, are as follows:

(a) On April 12, 1910, the board of education elected C. S. Langdon to fill a vacancy; on April 29, 1910, the city council elected the same person as a member of the board.

(b) On November 9, 1910, the board of education elected Harrington Beard to fill a vacancy on the board; on November 11, 1910, the city council elected the same person to fill the vacancy.

(c) On October 13, 1911, the board of education elected Henry F. Burt to fill a vacancy; on October 27, 1911, the city council elected David F. Swenson to fill the same vacancy on the board. The board of education recognized the election of David F. Swenson instead of Mr. Burt.

(d) In 1918, pursuant to authority granted by L. 1917, c. 446, the board of education elected C. E. Purdy to fill a vacancy, and in the same year elected Nils Juell to fill another vacancy. Chapter 446 was declared unconstitutional by State ex rel. Pardee v. Erick-

son, 140 Minn. 509, 167 N. W. 734. Thereafter, the board was requested to send a representative to attend a meeting of the public welfare committee of the city council, where consideration would be given to a letter addressed to the council, which letter stated in part: "This law has just been declared unconstitutional; and thus the old law, providing for the filling of such vacancies by the City Council, comes into operation." The letter then went on to say that the city attorney was of the opinion that the past acts of the board, participated in by one or both members elected to fill the vacancies mentioned, were not invalidated by the declaration of the supreme court. "But future acts might be questioned, and therefore the Board of Education respectfully requests your honorable body to take such action as will fill the two vacancies in question." In accordance with the communication, the city council elected C. E. Purdy and Nils Juell to fill the vacancies on the school board.

(e) In 1920, the city council elected A. P. Ortquist to fill a vacancy.

(f) In 1928, the city council elected Walter Johnson to fill a vacancy.

(g) In 1938, the city council elected Owen Cunningham to fill a vacancy.

It appears to us that if it had been the intention of the legislature to amend § 125.03 so as to include special school districts organized under special laws, as in the case of the Minneapolis school district, it would have been a simple matter to include such a provision in the act. In the absence of a specific provision pertaining to a special school district, as in the case before us, and in the light of the past record where the Minneapolis city council has filled such vacancies, we find nothing in § 125.03 which in our opinion would change that situation. If we were to say that § 125.03 included a special school district such as that in the city of Minneapolis, we feel that it would be an attempt to judicially interpret into the statute language which is not there and language which could be inserted readily by the legislative body empowered to do so if it so desired.

 This case is not to be taken as a precedent in connection with all special school districts within the state of Minnesota, as we are basing our decision here on the question whether or not § 125.03 is applicable to the special school district of the city of Minneapolis. Our attention has been called to other special school districts in some other cities within the state, but we are not considering them here unless they are organized under similar special laws as the special school district of the city of Minneapolis and unless such cities have a home rule charter similar to that of the city of Minneapolis, which incorporated all special and general laws relating to education into it.

We hold that under the facts and circumstances of this case § 125.03 is *not* applicable to the board of education of the city of Minneapolis so as to authorize it to fill vacancies on its school board, and that such power is vested, under the provisions of the special acts and the home rule charter herein referred to, in the city council of the city of Minneapolis.

Let a writ of ouster issue.